IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. _____

FILED
SEP 2 9 2004
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

RONALD A. DONNELLY, JR., and
THERESA M. KITTELL,

    Plaintiffs,

v.

ARRINGDON DEVELOPMENT, INC.,

    Defendant.

**NOTICE OF REMOVAL**

**1:04 CV00889**

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Arringdon Development, Inc.

(hereinafter referred to as "Arringdon") gives notice of removal and hereby removes the above-

captioned action from the General Court of Justice, Superior Court Division, Durham County,

North Carolina, where it is now pending, to the United States District Court for the Middle

District of North Carolina. In support of this removal, Arringdon states as follows:

    1.    On 7 April 2004, an action was commenced against Defendant Arringdon in the

General Court of Justice, Superior Court Division, Durham County, North Carolina, Docket No.

04 CVS 01749, entitled *Ronald A. Donnelly, Jr. and Theresa M. Kittell v. Arringdon*

*Development, Inc.* Arringdon filed an Acceptance of Service on 27 April 2004, accepting

service of the Summons and the Complaint as of that date.

    2.    As alleged in the Complaint, Plaintiff Ronald A. Donnelly, Jr. is a citizen and

resident of Durham County, North Carolina. (Compl. ¶ 1.) Subsequent to the filing of the

Complaint, Donnelly served discovery responses indicating that he presently resides in

Pittsburgh, Pennsylvania.

3.      As alleged in the Complaint, Plaintiff Theresa M. Kittell is a citizen and resident of Durham County, North Carolina. (Compl. ¶ 2.) Subsequent to the filing of the Complaint, Kittell served discovery responses indicating that she presently resides in Pittsburgh, Pennsylvania.

4.      The Complaint names as the sole Defendant Arringdon, which is alleged to be, and is, a corporation organized under the laws of Florida. (Compl. ¶ 3; Answer ¶ 3.) Arringdon maintains its principal place of business in Lake Mary, Florida.

5.      The Complaint asserts claims for breach of contract and breach of implied warranty of habitability relating to the rental of residential property in Durham, Durham County, North Carolina. (Compl. ¶¶ 40-46.) The Complaint also includes a claim for unfair and deceptive trade practices in violation of § 75-1.1 of the North Carolina General Statutes and requests an award of treble damages and attorney's fees. (Compl. ¶ 58.)

6.      Plaintiffs' Complaint does not specify the amount of damages requested and instead claims damages "in excess of $10,000.00." (Compl. ¶¶ 42, 46, 57.) On 9 July 2004, Arringdon served each Plaintiff with a Request for Amount of Monetary Relief Sought pursuant to Rule 8(a)(2) of the North Carolina Rules of Civil Procedure. Plaintiffs' initial responses to these Requests, dated 9 August 2004, included only general categories of damages and a vague demand for damages of at least $10,000.00 before trebling.

7.      Plaintiffs' Amended Responses to Defendant's Requests, served by mail on 21 September 2004, for the first time identified a specific amount of damages requested by each Plaintiff and enabled Arringdon to ascertain that the amount in controversy in this matter exceeds $75,000.00 for each Plaintiff. Specifically, Donnelly's Amended Response to Defendant's Request for Amount of Monetary Relief Sought states that his damages, before trebling, are *at*

2

*least* $40,650.55, exclusive of interest and costs. Kittell's Amended Response to Defendant's Request for Amount of Monetary Relief Sought states that her damages, before trebling, are *at least* $42,778.05, exclusive of interest and costs.

8. Based on Plaintiffs' Amended Responses to Defendant's Requests for Amount of Monetary Relief Sought, it is now clear that the amount in controversy exceeds $75,000 for each Plaintiff, exclusive of interest and costs. In determining the amount in controversy, this Court may consider Plaintiffs' demand for treble damages pursuant to § 75-1.1 of the North Carolina General Statutes. See R.L. Jordan Oil Co. v. Boardman Petroleum, Inc., 2001 WL 1528458, at *3 n.3 (4th Cir. Dec. 3, 2001) (attached) ("When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages, available to [the plaintiff] under the [South Carolina Unfair Trade Practices Act]"); Talantis v. Paugh Surgical, Inc., 273 F. Supp. 2d 710, 714 (M.D.N.C. 2003) (considering a request for double damages under the North Carolina Wage and Hour Act in determining whether the amount in controversy requirement had been satisfied). If trebled, the damages claimed by Plaintiff Donnelly will total more than $121,000.00 and the damages claimed by Plaintiff Kittell will total more than $128,000.00. Plaintiffs' demand for attorneys' fees pursuant to § 75-1.1 may also be considered for purposes of determining the amount in controversy. See Talantis, 273 F. Supp. 2d at 713 n.3 (citing Missouri State Life Ins. v. Jones, 290 U.S. 1999, 54 S. Ct. 133, 78 L. Ed. 2d 267 (1933)). The amount in controversy with respect to each Plaintiff therefore exceeds $75,000, exclusive of interest and costs, and is within the diversity jurisdiction of this Court.

9. As shown in the preceding paragraphs, the United States District Court for the Middle District of North Carolina has original jurisdiction over the claims of Plaintiffs Donnelly

3

and Kittell pursuant to 28 U.S.C. § 1332 because the claims arise between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

10. Venue is appropriate in the Middle District of North Carolina because the General Court of Justice, Superior Court Division, Durham County, is located within this judicial district. 28 U.S.C. § 1441(a).

11. Pursuant to 28 U.S.C. § 1446(a), a true copy of all process, pleadings, and orders served on Defendant Arringdon is attached to this Notice as Exhibit A. Exhibit A includes all documents that have been filed with the Superior Court in this action.

12. Defendant Arringdon states that it first ascertained that the case is one removable to this Court upon receiving Plaintiffs' Amended Responses to Defendant's Requests for Amount of Monetary Relief Sought, which were served by mail on 21 September 2004. This Notice is filed within thirty days of receipt of these Responses and within one year after the commencement of the action. Arringdon's Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

13. Copies of this Removal Petition are simultaneously being served upon counsel for all parties of record and the State Court from which this action was removed.

WHEREFORE, Arringdon Development, Inc. prays that this cause proceed in this Court as an action properly removed thereto.

4

This the **29th** day of September 2004.

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Angela L. Little
N.C. State Bar No. 27281
Laura M. Loyek
N.C. State Bar. No. 28708

Attorneys for Arringdon Development, Inc.

OF COUNSEL:

SMITH MOORE LLP
P.O. Box 21927 (27420)
300 N. Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile:  (336) 378-5400

SMITH MOORE LLP
P.O. Box 27525 (27611)
2800 Two Hannover Square
Raleigh, North Carolina 27601
Telephone: (919) 755-8700
Facsimile:  (919) 755-8800

5

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing NOTICE OF REMOVAL has been duly

served upon the plaintiffs by depositing a copy thereof in the United States Mail, first-class,

postage prepaid, addressed to the following counsel of record:

Kimberly R. Wilson
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27609

E.D. Gaskins, Jr.
Michael J. Tadych
Everett, Gaskins, Hancock & Stevens LLP
127 W. Hargett Street, Suite 600
Raleigh, NC 27602

This the 29th day of September, 2004.

Angela L. Little

< KeyCite History >

Briefs and Other Related Documents

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

R.L. JORDAN OIL COMPANY OF NORTH CAROLINA, INCORPORATED, Plaintiff-Appellant,
v.
BOARDMAN PETROLEUM, INCORPORATED, a Georgia Corporation, Defendant-Appellee.

No. 01-1296.

Argued Sept. 25, 2001.
Decided Dec. 3, 2001.

Owner of gasoline station filed state court action alleging that competitor violated South Carolina Unfair Trade Practices Act (UTPA) by selling gasoline below cost to maintain two-cent price differential with brand name competitor. Competitor removed case to federal court. After receiving answer to certified question from South Carolina Supreme Court, 338 S.C. 475, 527 S.E.2d 763, the United States District Court for the District of South Carolina, Henry M. Herlong, Jr., J., found in favor of competitor, and owner appealed. The Court of Appeals held that: (1) district court did not make sufficient findings to warrant exercise of diversity jurisdiction, and (2) district court should have certified dispositive question to South Carolina Supreme Court.

Vacated and remanded.

West Headnotes

[1] Federal Courts ⊜ 300
170Bk300 Most Cited Cases

Federal district court could not exercise diversity jurisdiction over action under state unfair trade practices act without first determining principal places of business of both parties. 28 U.S.C.A. § 1332(c)(1).

[2] Federal Courts ⊜ 331.1
170Bk331.1 Most Cited Cases

Federal district court could not exercise diversity jurisdiction over gasoline station owner's action against competitor under state unfair trade practices act without first determining amount in controversy, even if parties stipulated that owner sold gas below cost, where there was no information regarding owner's sales volume. 28 U.S.C.A. § 1332.

[3] Federal Courts ⊜ 371
170Bk371 Most Cited Cases

Question of whether gasoline station violated South Carolina Unfair Trade Practices Act (UTPA) by reducing its price to maintain two-cent per gallon differential between its price and price of competitor's major brand gasoline presented novel issue of state law that should have been certified to Supreme Court of South Carolina.   S.C.Code 1976, § 39-5-325(A); S.C.Appellate Court Rule 228.
 **\*142** Appeal from the United States District Court for the District of South Carolina, at Spartanburg.  Henry M. Herlong, Jr., District Judge. (CA-98- 2892-7).

ARGUED:   Matthew A. Henderson, Henderson, Brandt & Vieth, P.A., Spartanburg, SC, for appellant. William Marvin Grant, Jr., Grant & Leatherwood, P.A., Greenville, SC, for appellee. ON BRIEF: Joshua M. Henderson, Henderson, Brandt & Vieth, P.A., Spartanburg, SC, for appellant. R. Perry Sentell, III, Kilpatrick Stockton, L.L.P., Augusta, GA, for appellee.

Before LUTTIG, WILLIAMS, and GREGORY

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

, Circuit Judges.

OPINION

PER CURIAM.

**1 R.L. Jordan Oil Company of North Carolina, Inc. (Jordan Oil) appeals from the district court's decision holding that Boardman Petroleum, Inc. (Boardman) did not violate the South Carolina Unfair Trade Practices Act (UTPA), S.C.Code Ann. § 39-5-10 *et seq.* (1995 & Supp.2000), by selling gasoline below cost to maintain a two-cent price differential with a brand name competitor. The record on appeal does not provide sufficient information for us to confirm that the district court had jurisdiction over Jordan Oil's complaint. Moreover, we believe that the novel question of state law at issue in this case is one that would be best resolved by the Supreme Court of South Carolina. Accordingly, we vacate the district court's judgment and remand with instructions to confirm the existence of subject matter jurisdiction and, if jurisdiction exists, to certify the question of state law at issue in this case to the Supreme Court of South Carolina.

I.

Both Jordan Oil and Boardman operated convenience stores in the Southeast. Jordan Oil, incorporated in South Carolina, operated approximately fifty-eight "Hot Spot" convenience stores in South Carolina, North Carolina, and Georgia. Boardman, incorporated in Georgia, operated approximately seventy "Smile Gas" stores in the Southeast; approximately twenty-eight of those were located in South Carolina.

Two of Jordan Oil's Hot Spot convenience stores were located in Spartanburg County, South Carolina, along Interstate Highway 26, one at the intersection with U.S. Highway 221 and the other at U.S. Highway 292. Both of these Hot Spot convenience stores were located within five *143 miles of Smile Gas convenience stores operated by Boardman. The present controversy arises out of a price war involving these four stores.

In July 1998, Jordan Oil began selling Shell brand gasoline at its Hot Spot convenience stores. Not long after the Shell logo and colors went up at Jordan Oil's stores, Boardman lowered the price of regular unleaded gasoline at its Smile Gas stores, setting it at two cents per gallon below the price of the Shell brand gasoline. Jordan Oil responded with its own price reduction, matching Boardman's prices. Boardman, however, lowered its prices again, reestablishing a two-cent per gallon price differential. This cycle of price adjustments continued downward until both parties were selling gas below cost. The parties continued to sell below cost until early October 1998.

II.

On September 2, 1998, Jordan Oil filed a complaint in state court alleging that Boardman, in violation of the UTPA, sold gasoline below cost, causing economic injury to Jordan Oil. Jordan Oil sought both injunctive relief and treble damages but did not enumerate its actual damages in its complaint.

On October 2, 1998, Boardman removed the case to the United States District Court for the District of South Carolina. Boardman filed an answer and a counterclaim alleging that Jordan Oil had violated the UTPA and seeking treble damages for the economic injury caused by Jordan Oil. Boardman later estimated that it lost $49,000 on the sale of regular gasoline during the period that both parties were selling below cost.

**2 In its answer, Boardman argued that section 325 of the UTPA, S.C.Code Ann. § 39-5-325 (1995 & Supp.2000), violated the due process of law provision of the South Carolina Constitution. S.C. Const. Art. 1, § 3. No state court had addressed whether this provision of the UTPA violated the South Carolina Constitution. The district court, therefore, certified this question to the Supreme Court of South Carolina. The Supreme Court of South Carolina adopted the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

"reasonable relationship standard" for reviewing challenges to state statutes on substantive due process grounds. *See R.L. Jordan Co. v. Boardman Petroleum, Inc.*, 338 S.C. 475, 527 S.E.2d 763, 765 (2000). Prior to this decision, South Carolina had applied the substantive due process analysis employed by the United States Supreme Court during the *Lochner* era. *See Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905).

Upon remand to the district court, the parties agreed to forgo a trial by stipulating to facts. Based upon these stipulated facts, the district court entered judgment in favor of Boardman on December 8, 2000. The district court concluded that Boardman's conduct was not covered by the UTPA because the UTPA did not apply to independent gasoline retailers and furthermore, even if Boardman's conduct were covered under the UTPA, Boardman was not in violation because the statute allows a retailer to sell below cost to "meet competition."

III.

Before we reach the merits of Jordan Oil's appeal, we first must determine whether diversity jurisdiction is proper. [FN1] **144** To satisfy the requirements of federal diversity jurisdiction, a civil action must be between "citizens of different States" and the amount in controversy must exceed $75,000. 28 U.S.C.A. § 1332(a)(1) (West 1993 & Supp.2001).

>     FN1. Although neither party addressed this issue, we are required to clarify subject matter jurisdiction to determine whether we have the power to hear the case. *Long v. Silver*, 248 F.3d 309, 314 n. 2 (4th Cir.2001); *see also Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n. 4 (4th Cir.1999)("[Q]uestions of subject matter jurisdiction must be decided 'first because they concern the court's very power to hear the case.' ") (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[1] (3d ed.1998)).

Looking first at the diversity of citizenship requirement, it is clear from the facts above that the parties, both corporations, were incorporated in different states, Jordan Oil in

South Carolina and Boardman in Georgia. In addition to its state of incorporation, however, a corporation is also a citizen "of the State where it has its principal place of business." 28 U.S.C.A. § 1332(c)(1). There are two methods to ascertain the principal place of business of a corporation. "One approach makes the 'home office,' or place where the corporation's officers direct, control, and coordinate its activities, determinative. The other looks to the place where the bulk of corporate activity takes place." *Mullins v. Beatrice Pocahontas Co.*, 489 F.2d 260, 262 (4th Cir.1974). These tests have been termed the "nerve center test" and the "place of operations test," respectively. *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir.1998). We "have endorsed neither [test] to the exclusion of the other." *Id.; see also Commissioner of Internal Revenue v. Soliman*, 506 U.S. 168, 191 n. 14, 113 S.Ct. 701, 121 L.Ed.2d 634 (1993) (Stevens, J., dissenting) (recognizing that "some courts regard[ ] the home office as the principal place of business and others regard[ ] it as the place where the principal operations of the corporation are conducted").

**3 [1] At oral argument, the parties stated that they were unaware of whether the district court had made a determination concerning their principal places of business. The issue of subject matter jurisdiction, however, is not affected by the parties' inattention because the "parties cannot waive lack of subject matter jurisdiction by express consent, or by conduct, or even by estoppel...." 13 Charles Alan Wright et al., Federal Practice & Procedure § 3522 (1984). *Accord Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ( "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, ... principles of estoppel do not apply, ... and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."). Therefore, it must be determined, for example, whether Boardman's activities in South Carolina, constitute the bulk of its operations, which would destroy diversity if the place of operations test applies.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

[2] We also are unable to determine, based on the facts before us, whether the amount in controversy requirement has been met. Removal is authorized for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C.A. § 1441. The issue, therefore, is whether Jordan Oil has alleged that more than $75,000 is in controversy. Jordan Oil, in its complaint, did not specify its alleged damages. [FN2] According to the stipulated facts, Boardman lost approximately $49,000 on the sale of regular unleaded gasoline. Combining sales from all grades, however, the Boardman stores operated at a profit. We do not reach the issue of how Boardman's overall economic gain affects its claim for damages because *145 it appears, although we have not decided, that Boardman's counterclaim may not be used in calculating the amount in controversy. *See* 14B Charles Alan Wright et al., Federal Practice and Procedure § 3725 (3d ed. 1998) ("The traditional rule has been that no part of the required jurisdictional amount can be met by considering a defendant's counterclaim."). *But see id.* ("There are cases allowing and cases denying removal on the basis of a compulsory counterclaim."). The parties also stipulated that Jordan Oil paid on average three cents per gallon more than Boardman for the gasoline it retailed and that Jordan Oil lowered its prices to match Boardman's price. The lack of any information on Jordan Oil's sales, however, prevents this court from determining whether the amount in controversy was sufficient for diversity jurisdiction. [FN3]

FN2. Boardman has the burden of establishing that the amount in controversy is jurisdictionally sufficient. *See Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.").

FN3. When calculating the amount in controversy, the district court should consider any special or punitive damages, such as treble damages, available to Jordan Oil under the UTPA. *See Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir.1983); 14B Charles Alan Wright et al., Federal Practice and Procedure §

3702 (3d ed.1998).

To ensure that the requirements for diversity jurisdiction are satisfied, we must remand to the district court to make the appropriate findings of fact to enable it to ascertain, using one of the two methods outlined above, the principal place of business of each party and to determine the amount in controversy.

IV.

**4 We now turn to the merits of Jordan Oil's appeal, which will be relevant only if the district court finds that diversity jurisdiction exists. Jordan Oil argues that the state law issue in this case, interpretation of the UTPA, is both novel and dispositive and therefore should be certified to the Supreme Court of South Carolina. We agree.

In *Grattan v. Board of School Commissioners*, 805 F.2d 1160, 1164 (4th Cir.1986), we explained that "[a] federal court's certification of a question of state law to that state's highest court is appropriate when the federal tribunal is required to address a novel issue of local law which is determinative in the case before it." *See also Langley v. Pierce*, 993 F.2d 36, 37-38 (4th Cir.1993) ("Because the resolution of the contentions of the parties is a matter of South Carolina law, and it appears to us that there is no controlling precedent on point in the decisions of the Supreme Court of South Carolina, we believe [it] proper to certify to the Supreme Court of South Carolina for decision the question in this case under S.C.App.Ct. R. 228.").

[3] The UTPA provides, in pertinent part, the following:
Except as otherwise permitted to meet competition as provided by this chapter, it is declared an unfair trade practice and unlawful for any person who is in the retail business of selling motor fuel to sell motor fuel of like grade and quality at retail at a price which is below the cost of acquiring the product plus taxes and transportation where the intent or effect is to destroy or substantially lessen competition or to injure a competitor.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

S.C.Code Ann. § 39-5-325(A). Whether or not Boardman engaged in an unfair trade practice when it sold regular gasoline below cost depends on what it means to "meet competition." Boardman claims it reduced its price to maintain a two-cent per gallon differential between its price and the price of Jordan's Shell gasoline. If meeting competition is limited to matching a competitor's price, then Boardman was in violation of the UTPA. If, however, meeting competition allows a retailer to compensate for other competitive factors, such as brand names, then Boardman's *146 actions did not violate the statute. [FN4] *Cf. Federal Trade Commission v. Sun Oil Co.*, 371 U.S. 505, 508, 83 S.Ct. 358, 9 L.Ed.2d 466 (1963) ("The two-cent-per-gallon difference in price between McLean and SuperTest represented the 'normal' price differential then prevailing in the area between 'major' and 'non-major' brands of gasoline. This 'normal' differential represents the price spread which can obtain between the two types of gasoline without major competitive repercussions."); *Borden's Farm Products Co. v. Ten Eyck*, 11 F.Supp. 599, 601 (S.D.N.Y.1935) (L.Hand, J.) ("[C]ommercially the 'advertised' brands had come into the minds of the public to mean a different grade of milk. The public may have been wrong; all milk is subject to the same tests; it may have been right; certainly it was, if the plaintiff's protestations in its advertisements are true. But right or wrong, that is what it believed, and its belief was the important thing."). We were unable to locate any controlling precedent on the interpretation of "meet competition" under section 325(A) of the UTPA. As this novel issue of state law is dispositive of the present case, it should be certified to the Supreme Court of South Carolina pursuant to Rule 228 of the South Carolina Appellate Court Rules.

FN4. It appears that Boardman's counterclaim, alleging that Jordan Oil violated the UTPA, fails under either reading because Jordan Oil reduced its price below cost only to match Boardman's price, never to a price below Boardman. (J.A. at 69.)

V.

**5 In summary, we vacate the judgment of the district court and remand with instructions to determine whether there is diversity of citizenship and whether the amount in controversy exceeds the jurisdictional amount. If jurisdiction exists, the district court is directed to certify the issue concerning whether an independent retailer can "meet competition" by selling below cost at a price that is two cents below the price of the national brand competitor under the UTPA.

*VACATED AND REMANDED WITH INSTRUCTIONS.*

23 Fed.Appx. 141, 2001 WL 1528458 (4th Cir.(S.C.)), 2001-2 Trade Cases P 73,512

Briefs and Other Related Documents (Back to top)

. 2001 WL 34379159 (Appellate Brief) Reply Brief of Appellant (May. 31, 2001)Original Image of this Document (PDF)

. 2001 WL 34379157 (Appellate Brief) Brief of Appellee (May. 17, 2001)Original Image of this Document with Appendix (PDF)

. 2001 WL 34379158 (Appellate Brief) Brief of Appellant (Apr. 17, 2001)Original Image of this Document with Appendix (PDF)

. 01-1296 (Docket) (Mar. 05, 2001)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

ATTACHMENT/EXHIBIT_____

# STATE OF NORTH CAROLINA

**FILED**

Durham County 2004 APR -7 AM 9: 26

DURHAM COUNTY, C.S.C.

BY

File No. 4CVS01749

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff 1 | |
|---|---|
| Ronald A. Donnelly, Jr. | |
| Tax ID/SSN | |

**GENERAL**
**CIVIL ACTION COVER SHEET**

| Name Of Plaintiff 2 | |
|---|---|
| Theresa M. Kittell | |
| Tax ID/SSN | |

☒ INITIAL FILING  ☐ SUBSEQUENT FILING

Rule 5(b), Rules Of Practice For Superior and District Courts

| Name Of Plaintiff 3 | |
|---|---|
| | |
| Tax ID/SSN | |

Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)

Kimberly R. Wilson
1305 Navaho Drive, Suite 400
Raleigh, NC 27619

## VERSUS

| Name Of Defendant 1 | | Attorney Bar No. | |
|---|---|---|---|
| Arringdon Development, Inc. | | 30044 | |

| Tax ID/SSN | Summons Submitted |
|---|---|
| | ☒ Yes ☐ No |

☒ Initial Appearance in Case  ☐ Change of Address

| Name Of Defendant 2 | | Name Of Firm |
|---|---|---|
| | | Lewis & Roberts PLLC |

| Tax ID/SSN | Summons Submitted | Tax ID No. | Telephone No. | FAX No. |
|---|---|---|---|---|
| | ☐ Yes ☐ No | 56-2022568 | (919) 981-0191 | (919) 981-0431 |

| Name Of Defendant 3 | | Counsel for |
|---|---|---|
| | | ☒ All Plaintiffs ☐ All Defendants ☐ Only (List party(ies) represented) |

| Tax ID/SSN | Summons Submitted |
|---|---|
| | ☐ Yes ☐ No |

☒ Jury Demanded In Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

| TYPE OF PLEADING | CLAIMS FOR RELIEF FOR: |
|---|---|
| (check all that apply) | |
| ☐ Amended Answer/Reply (AMND-Response) | ☐ Administrative Appeal (ADMA) |
| ☐ Amended Complaint (AMND) | ☐ Appointment of Receiver (APRC) |
| ☐ Answer/Reply (ANSW-Response) | ☐ Attachment/Garnishment (ATTC) |
| ☒ Complaint (COMP) | ☐ Claim and Delivery (CLMD) |
| ☐ Confession of Judgment (CNFJ) | ☐ Collection on Account (ACCT) |
| ☐ Counterclaim vs. (CTCL) | ☐ Condemnation (CNDM) |
|   ☒ All Plaintiffs ☐ Only (List on back) | ☐ Contract (CNTR) |
| ☐ Crossclaim vs. (List on back) (CRSS) | ☐ Discovery Scheduling Order (DSCH) |
| ☐ Extend Statute of Limitations, Rule 9 (ESOL) | ☐ Injunction (INJU) |
| ☐ Extend Time For Answer (MEOT-Response) | ☐ Medical Malpractice (MDML) |
| ☐ Extend Time For Complaint (EXCO) | ☐ Minor Settlement (MSTL) |
| ☐ Rule 12 Motion In Lieu Of Answer (MDLA) | ☐ Money Owed (MNYO) |
| ☐ Third Party Complaint (List Third Party Defendants on Back) (TPCL) | ☐ Negligence - Motor Vehicle (MVNG) |
| | ☒ Negligence - Other (NEGO) |
| ☐ Other: (specify) | ☐ Motor Vehicle Lien G.S. 44A (MVLN) |
| | ☐ Limited Driving Privilege - Out-of-State Convictions (PLDP) |
| | ☐ Possession of Personal Property (POPP) |
| | ☐ Product Liability (PROD) |
| | ☐ Real Property (RLPR) |
| | ☐ Specific Performance (SPPR) |
| | ☐ Other: (specify) |

**NOTE:** Small claims are exempt from cover sheets.

| Date | Signature Of Attorney/Party |
|---|---|
| 04/05/2004 | |

**NOTE:** The initial filing in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a cover sheet or the filing must comply with G.S. 7A-34.1.

AOC-CV-751, Rev. 10/01 © 2001 Administrative Office of the Courts  (Over)

NORTH CAROLINA

FILED
2004 APR -7 AM 9:26
DURHAM COUNTY C.S.C.

DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO._____

**4CVS01749**

RONALD A. DONNELLY, JR.,
and THERESA M. KITTELL,
      Plaintiffs,

      v.

ARRINGDON DEVELOPMENT,
INC.,
      Defendants.

)
)
)
)
)
)
)
)

**COMPLAINT**
**JURY TRIAL DEMANDED**

---

The Plaintiffs Ronald A. Donnelly, Jr. and Theresa M. Kittell ("Plaintiffs"), complaining

of the Defendant Arringdon Development, Inc. ("Arringdon"), allege and say as follows:

## PARTIES

1.    Plaintiff Ronald A. Donnelly, Jr. is, and at all times relevant hereto has been a

resident of Durham County, North Carolina.

2.    Plaintiff Theresa M. Kittell is, and at all times relevant hereto has been a resident

of Durham County, North Carolina.

3.    Defendant Arringdon Development, Inc. ("Arringdon") is, upon information and

belief, a corporation organized under the laws of the State of Florida, and is authorized to

transact business in North Carolina.

4.    Defendant Arringdon is, and at all times relevant hereto has been the

developer/owner of the residential development more commonly known as Colonial Grand at

Arringdon ("Colonial Grand") in Morrisville, North Carolina.

## FACTUAL BACKGROUND

5.    On or about May 20, 2003, Mr. Donnelly and Ms. Kittell entered into a residential

Lease agreement ("Lease") for apartment 828 at Colonial Grand (the "Apartment") with

{00197888.DOC}                 1

Arringdon as landlord and Colonial Grand at Arringdon as Arringdon's agent per paragraph 10 of the Lease. A true and accurate copy of the Lease is attached here as Exhibit A.

6.    Pursuant to paragraph 17 of the Lease, Arringdon obligated itself to be "responsible for all maintenance of the Apartment, including, *but not limited to*, HVAC, electrical, mechanical, plumbing, and exterior and interior structural, lawn care, lawn fertilizing, pool care, and regular pest control."

7.    N.C. Gen. Stat. § 42-42(a) creates an implied warranty of habitability such that a landlord warrants to the tenant that the premises are fit for human habitation.

8.    Upon moving into the Apartment in May of 2003, Mr. Donnelly and Ms. Kittell noticed a foul odor. They immediately notified Arringdon about the odor. Arringdon advised Mr. Donnelly and Ms. Kittell that the odor was the result of new carpet and fresh paint on the walls.

9.    Upon information and belief, Arringdon knew that the odor was not solely caused by carpet cleaning and paint fumes but was also the result of moisture intrusion into the exterior wall of the Apartment adjacent to the balcony.

10.    Upon information and belief, many of Colonial Grand's balcony landings had been replaced just prior to, or at the same time as, Mr. Donnelly and Ms. Kittell leasing the Apartment due to faulty construction. Upon further information and belief, the construction defects led to water intrusion.

11.    During the first two weeks of July 2003, the foul odor in the front bedroom/office intensified. Mr. Donnelly and Ms. Kittell expressed even greater concern because Ms. Kittell was in her first trimester of a high risk pregnancy. By this time, Mr. Donnelly and Ms. Kittell began to notice that the intensity of the odor increased with high humidity and rain. In addition,

Mr. Donnelly and Ms. Kittell noticed that their personal belongings, including clothing, which were hanging in the front bedroom closet, began to show signs of discoloration.

12. As the odor intensified, plaintiffs began experiencing health problems. Mr. Donnelly began having a rash all over his body, burning and blood shot eyes, swelling around his eyes, headaches and fatigue.

13. Ms. Kittell was experiencing chronic cough, shortness of breath, sinus problems, cognitive problems, headaches, and chronic fatigue.

14 During the third week of July 2003, the family's pet cat Camy, which often slept in the front bedroom closet, became ill. Camy started vomiting, experienced diarrhea and breathing problems. Camy was taken to the veterinarian on July 19, 2003, and was diagnosed as having a blockage in its throat. The veterinarian described the condition as a nasopharyngeal abscess above her soft palate. The vet told the Plaintiffs that this condition was rare and unusual.

15. Mr. Donnelly and Ms. Kittell notified Arringdon of the continued odor and discoloration of their clothes on numerous occasions between July 2003 and August 2003. Mr. Donnelly and Ms. Kittell advised Arringdon that they suspected the problems they were having were caused by mold. Moreover, Mr. Donnelly and Ms. Kittell regularly requested that Arringdon to cut a hole in the front bedroom closet to determine if there were water leaks and mold growth in that area.

16. Due to the presence of mold in their Apartment and contamination of their property, and with knowledge of Arringdon, Mr. Donnelly and Ms. Kittell vacated the Apartment on August 20, 2003 leaving behind their personal possessions, which include clothes, shoes, furniture, pictures, plants, all sentimental possessions and items purchased in expectation of the birth of their child. Until Mr. Donnelly and Ms. Kittell were able to move into another apartment, they stayed at the Guest Suite Apartment at Arringdon at Colonial Grand.

17.     On August 15, 2003, Ben Trevathan (Head of Maintenance) went to the Apartment to check behind the wall for mold. Mr. Trevathan stated on his work order that he had checked and found no visible mold. Mr. Trevathan also sprayed a chemical in the closet area of the front bedroom. He ran bleach in the dishwasher. Mr. Donnelly and Ms. Kittell were upset because Arringdon was aware she was pregnant and Arringdon was told that no chemicals should be used in the Apartment.

18.     Mr. Donnelly and Ms. Kittell asked for a MSDS sheet of the chemical that was sprayed in the Apartment. The information was not provided to them until August 21, 2003.

19.     Arringdon visited the Apartment on August 21, 2003. Arringdon cut a hole into the wall in the bedroom closet closest to the adjacent balcony. The hole was left open and uncovered after the visit. Arringdon acknowledged that the closet appeared to have been wet and the Apartment had a distinct odor that was rather musty smelling. However, Arringdon told Mr. Donnelly and Ms. Kittell that no mold was present.

20.     Arringdon sent Allan Collins from Contravest Construction to the Apartment on August 22, 2003. The Plaintiffs were told that Contravest was going to conduct mold testing. Mr. Donnelly and Ms. Kittell never received a copy of the work order authorizing the visit and were not told the outcome of their findings.

21.     On September 2, 2003, Plaintiffs requested that a company conduct an environmental assessment of the Apartment. This company used an electronic hydrometer test (moisture meter) to test for water content in various building materials such as drywall, carpet and padding, and insulation materials. A small hole was cut in the drywall next to the larger cut made by Mr. Trevathan during his visit on August 21, 2003. Hydrometer readings from this hole

indicated that the fiberglass insulation in the wall cavity contained greater than 25% moisture. Samples taken from the insulation also revealed mold growth.

22.    Both Mr. Donnelly and Ms. Kittell sought medical treatment for their symptoms. Ms. Kittell was diagnosed with asthma on September 26, 2003. In addition, immunotherapy testing on October 2, 2003 showed that Mr. Donnelly and Ms. Kittell had both developed an allergy to mold.

23.    On September 23, 2003 the company performed follow-up testing at the Apartment. This testing revealed several species of mold including, but not limited to the following: *Amerospores, Ascospores, Aspergillus, Penicillium, Cladosporium, and Curvularia. Aspergillus* and *Penicillium* are dangerous molds known to grow on water damaged materials.

24.    On September 15, 2003, Arringdon sent U.S. Restoration to perform mold testing in the Apartment. Dennis Zagata of U.S. Restoration sent samples to EMSL for analysis. That analysis showed "low" levels of mold contamination in the front bedroom closet and the kitchen dishwasher.

25.    Wendy Ruud from Insurance of America contacted Ms. Kittell on behalf of Arringdon and advised her of the results of US Restorations findings. Ms. Ruud further advised Ms. Kittell that there was no evidence of mold in the Apartment. Ms. Rudd told Ms. Kittell that their property would not be cleaned. At this point and time, Arringdon advised Mr. Donnelly and Ms. Kittell that all issues pertaining to the Apartment would be addressed by Wendy Ruud.

26.    On September 24, 2003 the Durham City-County Inspections Department notified Ms. Gabby Mossman, property manager for Colonial Property Services, Inc., that the wall cavities in the master bedroom were holding water from water infiltration, and that the gypsum wall board in the closet needed to be removed and the cavities cleaned and dried before installing new insulation and wall board.

27.    On September 30, 2003 Arringdon and its property manager were served with a Notice of Hearing regarding the Apartment. The Notice of Hearing stated that the Apartment was in violation of the Durham City Housing Code Article VI Chapter Six Section 6-158 due to the mildew buildup and smell from the Apartment baseboards, and the moisture/mildew buildup throughout the interior of the structure.

28.    On October 6, 2003, Mr. Donnelly and Ms. Kittell retained a home inspector and general contractor to perform an inspection of the interior and exterior of the Apartment. The inspector confirmed the presence of a noticeable and distinct smell of mold upon entering the Apartment. According to the inspector, "the odor was very noticeable in the bedroom to the left of the front door. The odor was overwhelming in the left bedroom closet area." Mold was noted to be present in these areas.

29.    The inspector also indicated that the mold growth was caused by rainwater intrusion from the balcony adjacent to the front bedroom. The inspector stated that the concrete slab of the balcony sloped towards the building causing rainwater to penetrate the wood sill plate and absorb into the OSB sheathing. This sheathing was visible in the left bedroom closet area, and was noted to be wet to the touch and contaminated with mold.

30.    In October of 2003, an engineering firm was hired to perform a full scale environmental study of the Apartment. The testing occurred on October 15, 16 and 17, and November 6, 2003. The testing involved visual inspection of the interior and exterior of the Apartment, moisture readings, air sampling, vacuum sampling, tape lift sampling, bulk sampling and swab sampling. In addition, microbial growth and spores were speciated; and, testing for mycotoxins and endotoxins were performed. Testing was also conducted on the HVAC system of the Apartment.

31.    The engineering firm determined in part that:

a. Mold and moisture problems in the front bedroom closet are prevalent;

b. The moisture appears to be related to construction of the exterior balcony area and rock veneer wall;

c. Air samples revealed elevated concentrations of fungi in the Apartment compared with outdoor levels;

d. Bulk samples of testing revealed high levels of *Aspergillus versicolor* in the front bedroom closet area;

e. *Aspergillus versicolor were* the dominant airborne mold;

f. Aspergillus versicolor produces a mycotoxin known as: 5-methoxysterigmatocystin;

g. Mycotoxin testing indicated the presence of 5-methoxysterigmatocystin on the sheathing in the closet of the front bedroom.

h. Other fungi identified in the Apartment through testing are: *Penicillium chrysogenum, Penicillium minioluteum, Trichoderma, Chaetomium, Cladosporium, Graphium and Monodictys.*

32. Because of aforementioned mold contamination, Mr. Donnelly and Ms. Kittell were forced to leave the Apartment and store all of their personal possessions until it can be determined what items can be remediated of the mold and what items must be destroyed.

## DAMAGES

33. Mr. Donnelly and Ms. Kittell are informed and believe that their personal property is contaminated by mold and must be remediated or replaced at a cost in excess of $10,000.00.

34. Mr. Donnelly and Ms. Kittell are informed and believe that they have sustained personal injuries as a result of exposure to mold and bacteria in the Apartment; and, will continue to require medical treatment as a result of said injuries.

35. Mr. Donnelly and Ms. Kittell are informed and believe that the mold and bacteria growth in the Apartment was caused by water intrusion into the front bedroom closet from the balcony located immediately outside the bedroom closet.

36.    Mr. Donnelly and Ms. Kittell are informed and believe that the Arringdon knew or should have known that the odor in the Apartment was caused by water running into the Apartment from the balcony.

37.    Mr. Donnelly and Ms. Kittell are informed and believe that the Arringdon knew or should have known that the water intrusion into the front bedroom closet would result in mold growth if not immediately addressed.

38.    Arringdon failed to refund, replace or remediate Mr. Donnelly's or Ms. Kittell's personal property.

39.    Mr. Donnelly and Ms. Kittell have been damaged by Arringdon's actions and/or failures to act in that they must incur remediation expenses and/or replacement costs of personal property; have incurred additional expenses associated with their forced evacuation from the contaminated Apartment and abandonment of their personal property; and have incurred medical expenses.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract - Arringdon)

40.    Mr. Donnelly and Ms. Kittell re-allege and incorporate herein the allegations contained in paragraphs 1 through 39. Pursuant to paragraph 17 of the Lease with Mr. Donnelly and Ms. Kittell, Arringdon were responsible for all maintenance of the premises, including, but not limited to, HVAC, electrical, mechanical, plumbing, and exterior and interior structural requirements.

41.    Arringdon breached the Lease by failing to provide and maintain the premises in a fit and habitable condition. Specifically, they leased the Apartment to Mr. Donnelly and Ms. Kittell which, as described above in paragraphs 8-21, was defectively constructed and contaminated with mold. In addition, Arringdon failed to properly investigate the source of the mold contamination which existed in the Apartment and make the necessary repairs.

{00197888.DOC}                                  8

42.   The above referenced mold contamination has caused personal injury to Mr. Donnelly and Ms. Kittell, as well as damage to the contents of the Apartment.   Such damages are in excess of $10,000.00.

## SECOND CLAIM FOR RELIEF
### (Breach of Implied Warranty of Habitability, N.C. Gen. Stat. § 42-42(a))

43.   Mr. Donnelly and Ms. Kittell re-allege and incorporate herein the allegations contained in paragraphs 1 through 42.

44.   N.C. Gen. Stat. § 42-42(a) creates an implied warranty of habitability such that a landlord warrants to the tenant that the premises are fit for human habitation.

45.   Specifically, N.C. Gen. Stat. § 42-42(a) requires landlords and their agents to:

    a.   comply with the current applicable building and housing codes;

    b.   make all repairs and do whatever is necessary to put keep the premises in a fit and habitable condition;

    c.   keep all common areas of the premises in a safe condition; and

    d.   maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, air conditioning, and other facilities and appliances supplied by him provided that notification of needed repairs is made to the landlord in writing.

46.   Arringdon's breaches of the statutory implied warranty of habitability, as described above, are the proximate cause of damage to Mr. Donnelly and Ms. Kittell in an amount to be determined at trial but, upon information and belief, in excess of $10,000.00.

## THIRD CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1)

47.   Mr. Donnelly and Ms. Kittell re-allege and incorporate herein the allegations contained in paragraphs 1 through 46.

48.     N.C. Gen. Stat. § 75-1.1 prohibits unfair or deceptive acts or practices in or affecting commerce.

49.     The rental of residential housing constitutes trade of commerce for purposes of N.C. Gen. Stat. § 75-1.1

50.     Arringdon knew, prior to entering the lease with Mr. Donnelly and Ms. Kittell that the Colonial Grand including Mr. Donnelly's and Ms. Kittell's Apartment, were defectively constructed and suffering from moisture intrusion.

51.     Arringdon also knew that the moisture intrusion had caused mold to develop inside the structural components of the apartments, including Mr. Donnelly and Ms. Kittell's unit.

52.     Arringdon had a duty not to lease an apartment with construction defects and mold contamination caused by the defective construction.

53.     Aggravating factors known to Mr. Donnelly and Ms. Kittell to date which show that Arringdon's violations of North Carolina law are unfair and/or deceptive are as follows:

      a.    Arringdon leased the Apartment to Mr. Donnelly and Ms. Kittell knowing that was a construction defect which would lead to water intrusion and mold in the Apartment.

      b.    At the time Mr. Donnelly and Ms. Kittell complained of the foul odor in the Apartment, Arringdon knew the odor was not from new paint or carpet and withheld that material information from Plaintiffs..

      c.    Arringdon sprayed a chemical in the front bedroom adjacent to the balcony to cover up the foul odor despite Mr. Donnelly telling Arringdon not to because of Ms. Kittell's pregnancy.

      d.    Arringdon failed to timely respond to Mr. Donnelly's and Ms. Kittell's request to investigate what they thought could be a potential mold problem in the Apartment.

      e.    Arringdon continued to permit Mr. Donnelly and Ms. Kittell to reside in the Apartment knowing that they, their cat and their property were being exposed to fungal and bacterial contamination.

f.    To date, Arringdon has failed to give Mr. Donnelly and Ms. Kittell rent abatement even though Arringdon knew Mr. Donnelly and Ms. Kittell's Apartment was uninhabitable during their tenancy due to Arringdon's conduct.

54.    Despite Arringdon's knowledge of the defects and mold contamination associated with the Apartment, Arringdon intentionally failed to adequately disclose such information to Mr. Donnelly or Ms. Kittell.

55.    Arringdon's failure to adequately disclose the above referenced problems was unethical, immoral, and substantially injurious to Mr. Donnelly and Ms. Kittell.

56.    Mr. Donnelly and Ms. Kittell relied of Arringdon's misrepresentations in leasing the defective and contaminated apartment.

57.    Mr. Donnelly and Ms. Kittell have suffered serious damage as a result of Arringdon's actions.  Arringdon's actions have caused personal injury to Mr. Donnelly and Ms. Kittell, as well as damage to the personal property of Mr. Donnelly and Ms. Kittell's apartment. Such damages are in excess of $10,000.00.

58.    Pursuant to the provisions of N.C. Gen. Stat. § 75-1.1 Mr. Donnelly and Ms. Kittell are entitled to treble damages, as well as attorney's fees in the Court's discretion.

**WHEREFORE**, Mr. Donnelly and Ms. Kittell pray the Court as follows:

1.    That Mr. Donnelly and Ms. Kittell have and recover from Arringdon a sum in excess of $10,000.00 with pre- and post-judgment interest thereon as provided by law;

2.    That damages, including attorneys fees, be trebled pursuant to N.C. Gen. Stat.§75-1.1.

3.    That the costs of this action be taxed against Arringdon;

4.    For a trial by jury on all issues so triable; and

5.    For such other and further relief as the Court may deem just and proper.

This the 5th day of April, 2004.

LEWIS & ROBERTS, PLLC

_____
Kimberly R. Wilson
Attorneys for the Plaintiffs
1305 Navaho Dr., Suite 400
Raleigh, North Carolina 27609
Telephone: (919) 981-0191
Facsimile: (919) 981-0199


EVERETT, GASKINS, HANCOCK & STEVENS, LLP


E.D. Gaskins, Jr.
Michael J. Tadych
Post Office Box 911
Raleigh, North Carolina 27602
Telephone: (919) 755-0025
Facsimile: (919) 755-0009


EXHIBIT

A

# WELCOME TO
## COLONIAL GRAND AT ARRINGDON

Thank you for choosing Colonial Grand at Arringdon to be your new home; we are proud to have you as a new neighbor. Colonial Grand at Arringdon is managed by Colonial Properties Trust. Colonial Properties Trust owns and manages many communities throughout Alabama, Florida, Georgia, Mississippi, South Carolina, Texas, Tennessee and now North Carolina. This means that you will have the support of trained professionals throughout the Southeast to assist you, no matter what your needs are. We hope that you enjoy your new home and remember the staff of Colonial Grand at Arringdon is here to serve you.

**Our convenient office hours are:**

| | |
|---|---|
| Monday – Friday | 8:30 am-6:00 pm |
| Saturday | 9:00 am–5:00 pm |
| Sunday | 1:00 pm-5:00 pm |

**Colonial Grand Staff Members**
Gabby Mossman –Property Manager
Holly Beal – Assistant Manager
Mindy Monell – Leasing Consultant
Isaac Heckert – Leasing Consultant
Ben Trevathan – Maintenance Supervisor

**Most Frequently Used Phone Numbers**

| | |
|---|---|
| Arringdon office | (919)490-4663 |
| Arringdon fax | (919)490-0810 |
| Duke Power | (919)845-4174 |
| Time Warner Cable | (919)595-4892 |
| Road Runner Internet | (877)772-9892 |

*apt 1302 (919)*
*m. v1.*
*m m.*   monthly rent$$$██████

**YOUR NEW ADDRESS IS:** 5710 Arringdon Park Drive #  828
Morrisville, NC 27560

| | | |
|---|---|---|
| Application Fee | $ 100.00 | |
| Security Deposit | $ 100.00 | *applied to June* |
| Non-Refundable Fee | $ 0.00 | |
| Pro-Rated Rent from 05/20/03 to 05/31/03 | $ 390.58 | *waived early move-* |
| Water Fee | $ 0.00 | |
| Pet Fee (non refundable) | $ 0.00 | |

| | |
|---|---|
| Total | $ 590.58 |
| Total Paid Today | $ ~~200.00~~ 200.00 |
| TOTAL DUE BY May 20, 2003 | $ ~~390.58~~ ∅ |

**MOVE IN DATE :** May 20, 2003

Rent will be charged from said move-in date forward, and keys may be picked up when electricity is verified, move-in paperwork is completed, and amount due is paid in full.
By signing below you are committing to leasing the apartment on said move-in date, and paying rent from said move-in date. If you wish to cancel this rental you must notify the office of Colonial Grand at Arringdon within a 72 hour period of this document. If the 72 hour period has expired you will forfeit your security deposit.
Thank you for choosing Colonial Grand at Arringdon!

Signature _____     Date _____

*June*

*2003 special*
$$\div$$
*5*

*(6/03 - 10/03) 1009 − 400.60 = 608.40*
$$+$$
*(2 garages) 85.00*
*(7/03 - 10/03) 693.40*
*(6/03) −250.00*
*443.40*

# RESIDENTIAL LEASE AGREEMENT

1. **TERM AND PARTIES:** This is a Residential Lease Agreement ("Lease Agreement") between **ARRINGDON DEVELOPMENT, INC.** ("Landlord") and **Theresa Kittell, Ronald Donnelly, Jr.,** ("Resident") with Colonial Properties Services, Inc. ("Agent for Landlord") which begins on **May 20, 2003** and ends on **May 19, 2004** at:

   **COLONIAL GRAND AT ARRINGDON**

   **5710 ARRINGDON PARK DRIVE**

   **MORRISVILLE, NC 27560**

2. **OCCUPANTS:** The apartment will be occupied only by Resident(s) and (list all other occupants not signing the Lease Agreement):

   No one else may occupy the apartment. Persons not listed above must not stay in the apartment more than fourteen (14) consecutive days without Landlord's prior written consent and no more than twice that many days in any one- (1) month.

3. **PROPERTY RENTED:** Landlord leases to Resident Apartment No. **828** located at **5710 Arringdon Park Drive, Morrisville, North Carolina, 27560** ("the Premises").

4. **RENT PAYMENTS AND CHARGES:** Resident shall pay rent for the Premises in installments of **$1009.00** on the 1st day of each month. The lease payments shall be paid in advance without demand beginning **May 20, 2003**, and shall be made payable to **COLONIAL GRAND AT ARRINGDON** and shall be hand delivered to the property management office. Cash payment for rent is unacceptable. You may not withhold rent unless (1) you have prior judicial authorization of a right to do so, pursuant to N.C. Gen. Stat. § 42-44(c), or (2) you are expressly authorized by the terms of this Lease to do so.

   THIS LEASE PROVIDES FOR A FIXED BASE RENT AND A VARIABLE COMPONENT OF RENT BASED ON THE COST OF WATER AND SEWER SERVICE.

   THIS PROVISION WILL TAKE EFFECT WHEN ALL TENANTS HAVE EXECUTED A LEASE CONTAINGNG THIS PROVISION AND THE NORTH CAROLINA UTILITIES COMMISSION HAS ISSUED AN ORDER APPROVING THE VARIABLE COMPONENT OF RENT. UNTIL THAT TIME, ALL TENANTS MAY BE CHARGED FOR WATER / SEWER SERVICE IN THE TRADITIONAL MANNER, IF THE LANDLORD HAS OBTAINED A TEMPORARY AUTHORITY AND APPROVAL OF RATES BY THE COMMISSION.

5. **LATE CHARGES AND NSF FEES:** In addition to the lease payments described above, the Resident shall pay a late charge in the amount of **$50.45**, as additional rent, for each lease payment made after the 5th of the month. Resident shall also pay $25.00 for each dishonored check as additional rent. In addition, upon receipt of two dishonored items for whatever reason, personal checks will no longer be accepted as payment for the remainder of the lease term; in such an event, all future payments must be in the form of certified funds (i.e., cashier's check or money order).

6. **SECURITY DEPOSIT AND ADVANCE RENT:** The Resident shall pay to Landlord a security deposit of **$100.00** upon execution of this Lease. Landlord hereby declares and acknowledges that all monies taken as security deposits are deposited with **SOUTHTRUST BANK, N. A.** at **3500 WEST MILLBROOK ROAD, RALEIGH, NC 27613** in a separate non-interest bearing account for your benefit.

   Landlord shall have the right, but not the obligation, to apply the security deposit in



initials

who[...] in part in payment of any unpaid rent any other amounts due from Resident. Resident's liability is not limited to the amount of the security deposit. Upon termination of the Lease Agreement, and full payment of all amounts due and performance of all of the Resident's covenants and conditions (including surrender of the leased Premises), the security deposit or any portion thereof remaining unapplied shall be returned to Resident. Prior to Resident vacating the leased Premises, the leased Premises will be inspected by Landlord and Resident for damage to the leased Premises. The retention of the security deposit by Landlord shall in no way prevent Landlord from obtaining damages for breach of the Lease Agreement. The disposition and use of the security deposit shall be in accordance with the terms of N.C. Gen. Stat. § 42-50 *et seq.*

7. DELAY OF OCCUPANCY: If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, Landlord is not responsible for the delay. The Lease Agreement will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) Resident(s) right to terminate as set forth below. Termination notice must be in writing. After termination, Resident(s) are entitled only to refund of deposit(s) and any rent paid. Rent abatement or Lease Agreement termination does not apply if delay is for cleaning or repairs that do not prevent Resident(s) from occupying the apartment.

If there is any delay and Landlord has not given notice of delays as set forth immediately below, Resident(s) may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any Resident(s) when or after the Lease Agreement begins – and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date – Resident(s) may terminate the Lease Agreement within 3 days of Resident(s) receiving the notice, but not later.

(2) If Landlord gives written notice to any Resident(s) before the effective Lease Agreement date and the notice states that construction delay is expected and that the apartment will be ready for Resident(s) to occupy on a specific date, Resident(s) may terminate the Lease Agreement within 7 days after Resident(s) receives written notice, but not later. The readiness date is considered the new effective Lease Agreement date for all purposes. This new date may not be moved to an earlier date unless Landlord and Resident(s) agree.

8. AMENITIES AND CONSTRUCTION: It is agreed and understood by Resident that all amenities for Resident's use are temporary and that they may be altered or removed at any time without notice and without the consent of Resident. Amenities include, but are limited to, access gates, fitness cen[...], tennis courts, car wash, swimming pool, laundry room, club house, and play area. Resident agrees to hold Landlord, its agents and assigns, harmless and to indemnify same against any and all liability arising from the alteration or removal of any and all amenities. Resident understands and agrees that the apartment community is or may be under further construction and agrees to hold Landlord, management, their agents and assigns, harmless for the complete absence of any amenities or the delay in the availability of any amenities which may have been advertised, appear on any advertising materials, or represented to Resident by any of the staff. Resident agrees to hold Landlord, management, their agents and assigns, harmless for any inconvenience including, but not limited to noise, construction traffic, dust, construction equipment, temporary utility outages, etc.

9. RENEWAL / EXTENSION / HOLDOVER: Unless Resident notifies Landlord in writing or unless Landlord notifies Resident in writing at least 30 days before expiration of the term of this Lease Agreement of an intention to terminate the Lease Agreement, the Landlord shall have the right to treat the Resident as a holdover on a month-to-month basis. Landlord may charge Resident monthly rent at the market rate existing at the end of the original lease term. In addition to the rent, Landlord may charge Resident a month-to-month fee. All terms of the original Lease Agreement shall remain in full force and effect. The security deposit will remain with the Landlord under the same terms as set out in paragraph 6 above.

10. NOTICES: COLONIAL GRAND AT ARRINGDON is Landlord's agent. All notices to Landlord and all lease payments must be sent to Landlord's agent at 5710 ARRINGDON PARK DRIVE, MORRISVILLE, NC 27560 unless Landlord gives Resident written notice of the change. Landlord's agent may perform inspections on behalf of the Landlord. All notices to Landlord shall be given by certified mail, return receipt requested, or by hand delivery to Landlord or Landlord's agent. Any notice to Resident shall be given by certified mail, return receipt requested, or delivered to Resident at the Premises. If Resident is absent from the Premises, a notice to Resident may be given by leaving a copy of the notice at the Premises.

11. TRANSFER CANCELLATION PRIVILEGE: It is understood and agreed that if Resident is transferred by his employer to a location greater than fifty miles from the leased Premises during the term of the Lease Agreement, Resident shall remain liable for the payment of monthly rent due under this Lease Agreement 1) for the remainder of the lease term OR 2) until Landlord has re-rented the leased premises, whichever event occurs first. As an alternative, Resident may, at Resident's sole option, secure a release from the Lease



*initials*

Agr⁓ ⁓nt by giving thirty (30) days written noti⁓ ⁓ Landlord and by presenting to Landlord a letter from Resident's employer stating the location of transfer,, AND, in consideration for this right of cancellation, Resident agrees to pay Landlord an amount equal to two (2) months' rent. It is further understood that this release may be obtained only if all provisions of this Lease Agreement have been complied with by Resident. Furthermore, Resident will not be released from this Lease Agreement for any other reason including, but not limited to, voluntary or involuntary school withdrawal or transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

12. MILITARY SERVICE: Any member of the United States Armed Forces who is required to move pursuant to permanent change of station orders to depart 50 miles or more from the location of a rental premises or who is prematurely or involuntarily discharged or released from active duty with the United States Armed Forces may terminate his or her Lease Agreement by providing the Landlord with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after the Landlord's receipt of the notice. The notice to the Landlord must be accompanied by either a copy of the official military orders or a written verification signed by the member's Commanding Officer. In the event a member of the United States Armed Forces dies during active duty, an adult member of his immediate family may terminate his Lease Agreement by providing the Landlord with a written notice of termination to be effective on the date stated in the notice that is at least 30 days after the Landlord's receipt of the notice. The notice to the Landlord must be accompanied by either a copy of the official military orders or a written verification signed by the member's Commanding Officer.

Upon termination of a Lease Agreement under this section, the Resident is liable for the rent due under the Lease Agreement prorated to the effective date of the termination payable at such time as would have otherwise been required by the terms of the Lease Agreement. The Resident is not liable for any other rent or damages due to the early termination o f the tenancy except the liquidated damages provided in this section. If a Resident terminates the rental agreement pursuant to this section 14 or more days prior to occupancy, no damages or penalties of any kind are due. In consideration of early termination of the Lease Agreement, the Resident is liable to the Landlord for liquidated damages provided the tenant has completed less than nine months of tenancy and the Landlord has suffered actual damages due to loss of the tenancy. The liquidated damages shall be equal to one month's rent if the Resident has completed less than six months of the tenancy as of the effective date of termination, or one-half of one month's rent

if ⁓ ⁓esident has completed at least six but les⁓ ⁓an nine months of the tenancy as of the effective date of termination.

The provisions of this section may not be waived or modified by the agreement of the parties under any circumstances.

T.m.⁓ _____ initials
⁓ _____ initials        _____ initials
                         _____ initials

13. ABANDONMENT OF PERSONAL PROPERTY: Resident agrees to notify Landlord in writing of any anticipated extended absence from the leased Premises in excess of seven (7) days and said notice shall be given on or before the first day of any extended absence. If Resident willfully fails to give notice as required, Landlord may recover actual damage from Resident. During any absence of Resident in excess of seven (7) days, Landlord may enter the leased Premises at times reasonably necessary to inspect the Premises and/or ascertain the whereabouts of Resident. Resident agrees any unexplained and / or extended absence from the leased Premises for thirty (30) days or more without payment of rent as due shall be prima facie evidence of abandonment, and thus prima facie evidence of a breach of this lease agreement, and Landlord is expressly authorized to enter, remove, and store all personalty belonging to Resident through the applicable summary ejectment statutes of the State of North Carolina.

14. RISK OF LOSS AND INSURANCE: Any property of any kind belonging to Resident which shall be brought upon the apartment grounds during the term of the Lease Agreement, or any renewal thereof, shall be at the complete and sole risk of Resident. Landlord shall not be liable to Resident, Resident's family, employees, guests or invitees, for any damage to person or property caused by the acts or omissions of other residents or other persons, from the use of the rented Premises or any common areas including, but not limited, to swimming pools, ponds, lakes, waterfalls, or any other aspect of the waterscaping by Resident, Resident's family, employees, guests or invitees, whether such persons be off the property of Landlord or on the property with or without permission of Landlord; nor shall Landlord be liable for loss or damages resulting from failure, interruption or malfunctions in utilities provided to Resident under this Lease Agreement; nor shall Landlord be liable for injuries in or around the Premises. IT SHALL BE THE SOLE RESPONSIBILITY OF RESIDENT(S) TO OBTAIN THE NECESSARY INSURANCE TO PROTECT RESIDENT AND RESIDENT'S PROPERTY, AND LANDLORD STRONGLY RECOMMENDS THAT RESIDENT(S) SECURE ADEQUATE INSURANCE TO PROTECT RESIDENT AND RESIDENT'S PROPERTY.

*Landlord urges Resident(s) to get your own insurance for losses due to theft, fire, water*



T.m⁓ initials

damage and alike. Resident(s) intend to
(check ):

o   not buy insurance to protect against such losses, or

o   buy insurance from Resident(s) own agent to cover such losses.

*If neither is checked, Resident(s) acknowledge that Resident(s) will not have insurance coverage.*

T.m.W initials     _____ initials

ع.ل.ρ initials     _____ initials

15. USE OF PREMISES: Resident shall use the Premises only for residential purposes. Resident also shall obey and require anyone on the Premises to obey all laws and any restrictions that apply to the Premises. Resident also agrees to abide by the Community Rules and Regulations, a copy of which is attached as Exhibit "A" and incorporated by reference hereto. Landlord will give Resident notice of any restrictions that apply to the Premises. Resident shall not keep any dangerous or flammable items that might increase the danger of fire or damage to the Premises, storage, or garage units. Resident shall not create any environmental hazards on or about the Premises. Resident shall not destroy, deface, damage, impair or remove any part of the Premises belonging to Landlord nor permit any person to do so. Resident may not make any alterations or improvements to the premises without first obtaining Landlord's written consent to the alteration or improvement. Resident must act and require all other persons on the Premises to act in a manner that does not unreasonably disturb any neighbors or constitute breach of the peace.

Resident and Resident's occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including Landlord's agents and employees) in or near the apartment community; disrupting Landlord's business operations; manufacturing, delivering, possession with intent to deliver, otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring Landlord's reputation by making bad faith allegations against Landlord or Landlord's agents and employees.

16. RESIDENT SAFETY: Resident(s) and all occupants and guests must exercise due care for their own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting

devi    window latches, and other safety or secu.    .evices.

**Smoke / Heat Detectors.** Resident acknowledges that the apartment is equipped with one or more smoke and / or heat detectors and that Resident has inspected the smoke and / or heat detector and Resident finds them to be in good working order. Resident agrees that it is their responsibility to regularly test the smoke and / or heat detector and to notify Landlord immediately in writing of any problem, defect, malfunction, or failure of the smoke and / or heat detector. Resident must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at Resident(s) expense, without prior notice to Resident. Neither Resident(s) nor others may disable smoke and / or heat detectors. *Residents shall be responsible for replacing batteries which become dead or otherwise nonfunctioning during Resident(s) lease term.* If Resident(s) disable or damage the smoke and / or heat detector, Resident(s) shall reimburse Landlord for the actual costs of repairing or replacing the smoke detector within thirty (30) days of having received written notice from Landlord demanding reimbursement for such replacement or repair. Should Resident fail to reimburse Landlord upon demand, then Resident shall be subject to a fine of $100.00 for each violation pursuant to N.C. GEN. STAT. § 42-44(a). If Resident(s) disable or damage the smoke and / or heat detector, whether through negligence or otherwise, Resident(s) will be liable to Landlord and others for any loss, damage, or fines from fire, smoke, or water.

**Fire Extinguishers.** Resident acknowledges that the apartment is equipped with a fire extinguisher and that Resident has inspected the fire extinguisher and agrees that it is in good working condition. Resident agrees to pay a fee of $75.00 if the fire extinguisher is missing or if Resident uses the fire extinguisher for any other purpose other than to put out a fire.

**Grills.** All grills are strictly prohibited from the leased Premises including the storage thereof.

17. MAINTENANCE: Landlord and Resident agree that the Landlord shall be responsible for all maintenance of the Premises, including, but not limited to, HVAC, electrical, mechanical, plumbing, exterior and interior structural, lawn care, lawn fertilizing, pool care, and regular pest control. Resident shall be required to vacate the premises on seven days written notice for extermination, if necessary. When vacation of the Premises is required for extermination, Landlord shall not be liable for damages but shall abate the rent. Nothing in this section makes Landlord responsible for any condition created or caused by the negligent or wrongful act or omission of Resident, any member of Resident's family or any other person on the



T.m.W initials

ع.ع.л initials

Premises with Resident's consent. At all during the Lease Term, Resident shall comply with all obligations imposed upon Resident by applicable provisions or building, housing and health codes; keep the Premises clean and sanitary; remove all garbage from the dwelling unit in a clean and sanitary manner; keep all plumbing fixtures in the dwelling unit clean, sanitary, and in repair; and, use and operate in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances. Without prior written consent of Landlord, the Resident shall not make any alterations to the leased Premises or fixtures including, but not limited to: (1) no holes shall be drilled in the walls, woodwork, or floors; (2) no painting or wallpapering of the leased Premises shall be performed or permitted by Resident; (3) no antenna shall be installed without a signed satellite dish addendum and; (4) no additional telephone jacks should be permitted or installed.

Resident(s) must promptly reimburse Landlord for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Agreement or rules, improper use, or negligence by Resident(s) or Resident(s) guests or occupants. Unless the damage or wastewater stoppage is due to Landlord negligence, Landlord is not liable for – and Resident(s) must pay for – repairs, replacement costs, and damage to the following if occurring during the Lease Agreement term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving Resident(s) apartment. We may require payment at any time, including advance payment of repairs for which Resident(s) are liable. Delay in demanding sums Resident(s) owe is not a waiver.

18. UTILITIES: Resident agrees that Resident is solely responsible for paying all charges incurred by Resident for the use of water and / or sewer services (hereinafter referred to as "utilities") that are submetered for the Premises and billed and / or provided to Resident by the Provider described in Paragraph 1 of this Agreement. Such charges for utilities shall be considered variable rent in addition to Resident's total monthly rent amount, and the charges shall not exceed the total of 1) the cost of the purchased water and / or sewer service, plus 2) the cost of the submeter reading, and plus 3) the cost of billing and collection, said cost not to exceed the maximum allowed by N. C. Utilities Commission Rule R18-16. Resident shall receive bills for use of the utilities at least once per monthly period. Each bill shall list a billing date and the payment of such bill by Resident shall be considered past due if not received within twenty-five (25) days of the billing date. Resident agrees to allow Lessor agents of Provider access to the

Premises during regular business hours, if necessary, to read the submeter for the Premises. In the event that Resident fails to pay for the utilities, Resident understands that any and all unpaid amounts related to the utilities may be deducted from Resident's security deposit pursuant to N.C. GEN. STAT. §42-51. In consideration of the receipt of such utilities, Resident releases Lesso. and Provider from any and all liability arising from the use or enjoyment of the utilities or from any interruption or variations in the utilities, unless such injury or damage is the result of the gross negligence of the Lessor and / or Provider.

19. LIGHT BULBS: Landlord, at Landlord's expense, shall furnish necessary electric bulbs for the leased Premises when Resident takes possession, but thereafter, such light bulbs shall be furnished or replaced by Resident, at Resident's expense. No light bulbs shall be removed from the leased Premises by Resident, except those furnished by Resident in lamps owned by Resident.

20. LANDLORD'S ACCESS TO PREMISES: Landlord or Landlord's agent may enter the Premises under the following circumstances:

1. At any time for the protection and preservation of the Premises.

2. After reasonable notice to Resident at reasonable times for the purpose of repairing the Premises.

3. To inspect the Premises, make necessary or agreed upon repairs, decorations, alterations or improvements, supply agreed services, or exhibit the Premises to prospective or actual purchasers, mortgages, Residents, workers or contractors under any of the following circumstances:

   (a) With Resident's consent.
   (b) In case of emergency.
   (c) When Resident unreasonably withholds consent.
   (d) If Resident is absent from the Premises for a period of at least 30 days.

21. CASUALTY DAMAGE: If the Premises are damaged or destroyed other than by wrongful or negligent acts of Resident or persons on the Premises with Resident's consent so that the use of the Premises is substantially impaired, Resident may terminate the Lease within thirty days after the damage or destruction and Resident will immediately vacate the Premises. Resident is not liable for rent that would have been due after the date of termination. Resident may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Resident's liability for rent shall be reduced by the fair rental value of the part of the Premises that were damaged or destroyed. Landlord can refuse Resident access to the leased Premises in the case of a



T.M.K initials
initials

total loss to the leased Premises for Jent's safety and welfare.

22. RESIDENT'S LIABILITY: For injury to property of Landlord caused by negligence or fault of Resident, Resident's agents, family or guests, Resident agrees to reimburse Landlord promptly in the amount of any such loss. Resident also specifically agrees to pay for repairs and service to plumbing or appliances when the plumbing or appliance trouble is caused by Resident, Resident's family or guests. Resident is not liable for damage from ordinary wear and deterioration from reasonable use, or act of God.

23. DEFAULT:

1. Landlord's Default: Except as noted below, Landlord will be in default if Landlord fails to comply with Landlord's required maintenance obligations under paragraph 17 above or fails to comply with other material provisions of the Lease and such failure continues for more than seven days after Resident delivers the written notice to Landlord that tells Landlord has violated the Lease. If Landlord's failure to comply is due to causes beyond Landlord's control and if Landlord has made and continues to make every reasonable effort to correct the problem, the Lease may be altered by the parties as follows:

    (a) If Landlord's failure to comply makes the premises unhabitable and Resident vacates, Resident shall not be liable for rent during the period the Premises remain unhabitable.

    (b) If Landlord's failure to comply does not make the Premises unhabitable and Resident continues to occupy the Premises, the rent for the period of non-compliance will be reduced by an amount in proportion to the loss of rental value caused by the non-compliance.

2. Resident's Default: Resident will be in default if any of the following occur:

    (a) Resident fails to pay rent when due.

    (b) Resident fails to perform any of his obligations under the Lease.

3. Waiver of Default: If Landlord accepts rent knowing of Resident's default or accepts performance by Resident of any provision of the Lease different from the performance required by the Lease, or if Resident pays rent knowing of Landlord's default or accepts performance by Landlord of any provisions of the Lease different from the performance required by the Lease, the parties accepting the rent or performance or making the payment shall not have the right to terminate the Lease or bring a summary ejectment lawsuit for that default, but may enforce any later default.

24. REMEDIES AND DEFENSES:

1. Resident's Remedies: If Landlord has defaulted under the Lease and if Resident has given Landlord a written notice describing the default and Resident's intention to withhold rent if the default is not corrected within seven days, Resident may withhold an amount of rent equal to the loss of rental value caused by the default. If Resident's notice advises Landlord that Resident intends to terminate the Lease if the default is not cured within seven days and the default is not cured within the seven days, Resident may terminate the Lease. If Resident has given the notice, and if Landlord has not corrected the default within seven days, Resident may, in addition to withholding the applicable amount of rent, file a lawsuit in county court to require Landlord to correct the default and for damages. If Landlord's default makes the Premises unhabitable, and if Resident has given Landlord a notice describing the default and informing Landlord that Resident intends to terminate the Lease, then if Landlord does not cure the default within seven day period, Resident may terminate the Lease at the end of the seven days.

2. Landlord's Remedies: If Resident remains on the Premises without Landlord's permission after expiration or termination of the Lease, Landlord may recover possession of the Premises in the manner provided by law. Landlord also may recover double rent for the period during which Resident refuses to vacate the Premises. If Resident defaults under the Lease by failing to pay rent as set forth in paragraph 4 or if Resident fails to honor any single term or condition of this Lease, Landlord may terminate Resident's rights under the Lease and Resident shall vacate the Premises immediately. Landlord shall not recover possession of the Premises except:

    (1) Through a lawsuit for possession.

    (2) When Resident has surrendered possession of the Premises to the Landlord.

    (3) When Resident has abandoned the Premises. Absent actual knowledge of abandonment, the Premises shall be considered abandoned if the Resident is absent from them for at least one-half a rental installment period, the rent is not current, and Resident has not notified the Landlord, in writing, of an intended absence.

If Landlord re-takes possession of the Premises for Resident's account, Landlord must make a good faith effort to re-lease the Premises. Any rent received by Landlord as a result of the new lease shall be deducted from the rent due from Resident. For purposes of this section, "good faith" in trying to re-lease the Premises means that Landlord shall use at least the same efforts to re-lease the Premises as were used in the



T.M.C
initials

initial rental or at least the same effort as landlord uses in attempting to lease other similar property. It does not require Landlord to give a preference in leasing the Premises over other vacant properties that Landlord owns or has a responsibility to rent.

3. Other Remedies: Each party also may have other remedies available at law or in equity.

4. Attorney's Fees: In any lawsuit brought to enforce the Lease Agreement or under applicable law, the Resident shall be responsible for the payment of reasonable attorney's fees incurred by Landlord.

25. ASSIGNMENT OR SUBLETTING: Resident may not assign the Lease or sublease all or any part of the premises without first obtaining Landlord's written approval and consent to the assignment or sublease.

26. SUBORDINATION: This Lease is subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.

27. LIENS: Resident shall not have the right or authority to encumber the Premises or to permit any person to claim or assert any lien for the improvement or repair of the Premises made by the Resident. Resident shall notify all parties performing work on the Premises at Resident's request that the Lease does not allow any liens to attach to the Landlord's interest.

28. SPECIAL PROVISIONS: Any leasing concession given to Resident as an inducement to sign the Lease Agreement are to be repaid by Resident to Landlord in the event that the Lease Agreement terms and / or conditions are not fulfilled by Resident, if Resident fails to pay rent on or before the 5th day of the month, or if Resident's rent payment is returned dishonored for any reason. If any of the above occurs, all future concessions will be forfeited.

Apartment Number: 828

Amount of Concession: May03 free for early move-in plus $2253 prorated over Jun03-Oct03

Period to be Applied: 5/20/03-10/31/03

J.m.k initials _____ initials
KAD initials _____ initials

29. PACKAGE SERVICE RELEASE: Landlord agrees to accept deliveries such as oversize mail, overnight mail, or packages on behalf of Resident. Landlord retains the right to refuse any package or delivery for any reason at its option (i.e., furniture, perishable food, live articles). Resident hereby assumes ALL risk of loss of or damage to any delivery which Landlord accepts. Landlord does not warrant or guarantee any

safety or security for any deliveries accepted. Resident shall indemnify Landlord, and their agents, principals, employees, and any person claiming by or through them, against all claims, actions, proceedings, costs, damages, legal fees, and liabilities of any nature whatsoever, connected with, or resulting from, the acceptance or handling of any delivery and / or the refusal to accept any delivery. Resident agrees to hold Landlord harmless for any damages resulting from the loss of or damage to any delivery. In the event any action is filed in relation to this provision, Resident shall pay, in addition to all other sums Resident may be called upon to pay, a reasonable attorney's fee to Landlord, regardless of which party institutes such action. Resident agrees to pick up any delivery immediately upon verbal or written notification. The terms hereof constitute the full agreement of the parties, and no oral statements shall have any force or effect or be binding. This provision may be terminated at any time by Landlord for any reason, and Landlord shall have the right to refuse any delivery for any reason.

30. RESIDENT'S SECURITY: Landlord (including the Landlord and Landlord's authorized property manager) does not promise, warrant, or guarantee the safety or security of Resident(s) personal property against the criminal actions of other residents or third parties. Each Resident has the responsibility to protect himself or herself and to maintain appropriate insurance to protect his or her belongings. Resident should contact an insurance agent to arrange appropriate fire and theft insurance for their personal property.

No security system, courtesy patrol, or electronic security system can guarantee complete protection against crime. Even elaborate security systems are subject to mechanical malfunction, tampering, human error, or personal absenteeism, and can be defeated or avoided by clever criminals. Therefore, Residents should always proceed on the assumption that no security system exist. The best safety measures are those precautions that can be performed as a matter of common sense and habit.

If security systems, security devices, or walk-through services are employed at this community, no representation is being made that they will be effective to prevent injury, theft, or vandalism. Such personnel, if provided, cannot physically be every place at every moment. Usually, such personnel are unarmed independent contractors and have no greater authority under the law to restrain or arrest criminals than the ordinary citizen. Therefore, Landlord does not warrant that any security, security devices, or services employed at this community will discourage or prevent breaches of security, intrusions, thefts, or incidents of violent crime. Further, Landlord reserves the right to reduce, modify, or eliminate any security system, security devices, or services (other than those statutorily required) at any time;



J.m.k initials
_____ initials

and Resident agrees that such action shall be breach of any obligation or warranty ᴗᴗ the part of Landlord. Unless otherwise provided by law, Landlord is not responsible to Resident or Resident's guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of others including theft, burglary, assault, vandalism, or other crimes. Landlord is not responsible for obtaining criminal background checks on any Residents, occupants, guests, or contractors in the apartment community.

If controlled access gates or intrusion alarms are provided, Resident will be furnished written operational instructions. It is Resident's responsibility to read this and to bring any questions to the attention of Landlord. Further, Resident agrees to promptly notify Landlord in writing of any problem, defect, malfunction, or failure of door locks, window latches, controlled access gates, intrusion alarms, and any other security-related device. Resident is fully responsible for any damage done to the gates by anyone using their card or remote. Resident further understands that management is not responsible for damage to vehicles of Resident, Resident's guest, or invitees. Resident agrees to be responsible for all fines, penalties, and other charges resulting from or attributable to the alarm, including false alarm charges.

Resident acknowledges that Landlord has made no promises or guarantees about security or the safety of Resident, resident's guests, or invitees.

*Resident and Occupant Signature(s)*

_____

_____

_____

_____

_____

( 

_____

_____

In the case of emergency dial 911 or call local medical, emergency, fire, or police in case of accident, fire, smoke, or suspected criminal activity and then contact your community manager.

31. MISCELLANEOUS:

1. Time is of the essence of the Lease.

2. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors and permitted assigns of Landlord and Resident, subject to the requirement specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular, and the

-e of any gender shall include all propriate genders.

3. Resident acknowledges that, by the execution of this Lease Agreement, Resident is attesting to the fact that Resident is of legal majority.

4. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.

5. No agreement to accept surrender of the Premises from the Resident shall be valid unless in writing and signed by Landlord.

6. All questions concerning the meaning, execution, construction, affect, validity and enforcement of the Lease shall be determined pursuant to the laws of Florida.

7. The place for filing any suits or other proceedings with respect to the Lease shall be the county in which the Premises are located.

8. Landlord and Resident will use good faith in performing their obligations under the Lease.

9. Landlord will not permit a pet to live on the leased Premises without Resident(s) obtaining prior approval from Landlord, signing, and complying with the provisions of a separately negotiated pet agreement. All pets are subject to visual inspection and approval of Landlord at such times as Landlord may direct during normal working hours.

     T.M.M̶ Yes, I have a pet.
    *Initials*

    _____ No, I do not have a pet.
    *Initials*

10. If Resident is a corporation, limited liability company, partnership, or other business entity, the undersigned acknowledges that he or she is authorized enter into this Lease Agreement on behalf of such business entity.

32. ORIGINALS AND ATTACHMENTS: This Lease Agreement has been executed in multiple originals, each with original signatures – one for Resident(s) and one or more for Landlord. Our rules and community policies, if any, will be attached to the Lease Agreement and given to Resident(s) at signing. The items checked below are attached to this Lease Agreement and are binding even if not initialed or signed.

o  Co-Signer Guarantee Agreement
o✓ Community Rules & Regulations (Exhibit "A")
o✓ Pet Addendum
o✓ Garage / Storage / Parking Addendum
o✓ Washer / Dryer Addendum
o✓ Drug Free Housing Addendum
o  Lead Hazard Information and Disclosure Addendum



T.M.M̶
*initials*

o Gate Addendum
✓ ...ity Access Addendum
✓ Satellite Dish Addendum
✓ Maintenance Charges and Deposit
  Deductions
o Inspection Acceptance Form
o _____
o _____
o _____

**Resident(s) Signature** *(all sign below)*

_Theresa McKittell_

_Ronald A Connelly Jr_

_____

_____

_____

_____

_____

**Witness Signature** *(sign below)*

_____

**Owner, by Owner's Agent**
**Colonial Properties Services, Inc.**

_____
**Community Manager**

**Date of Signing Lease Agreement**

5/20/03
_____



_____ initials
initials

## GARAGE / STORAGE / PARKING ADDENDUM

Owner, through its manager, Colonial Properties, grants permission to <u>Theresa Kittell, Ronald Donelly Jr</u> in Apartment Number <u>828</u> to occupy the below space at <u>750-B</u> on a month-to-month basis.

Subject to the following conditions:
1. Management assumes NO responsibility for personal belongings stored in said units.
2. Resident is responsible for all damages and agrees to reimburse management for all damages. Resident is responsible for the maintenance and care of the fixtures inside and may not remove them for any reason.
3. Storage of gasoline, propane, kerosene, and / or other flammable items is prohibited.
4. Manager reserves the right of entry into said units for inspection, repair, alteration, or other reasonable business purposes connected with the operation of the property.
5. Resident should contact an Insurance Agent to arrange appropriate fire and theft insurance for their personal property.
6. Resident agrees to notify Landlord in writing at least 30 days before expiration of the term of this Garage / Storage / Parking Addendum of an intention to terminate the Addendum.

In consideration for paying an additional <u>$42.50</u> per month, Resident may occupy **Garage Number <u>B</u>** in Building Number <u>750</u>, subject to the following conditions:

1. Only the resident's vehicle shall occupy the garage.
2. Resident is responsible for the remote control opener. A deposit of $ ~~0.00~~ 0.00 will be charged at the time of rental. This deposit will be refunded if the remote is returned upon move-out and in operable condition.

Deposit Paid by Check # _____ or Money Order # _____ in the amount of $ _____

In consideration for paying an additional $_____ per month, Resident may occupy **Storage Number _____**, subject to the following conditions:

1. A deposit of $ 20.00 will be charged at the time of rental. This deposit will be refunded if keys are returned upon move-out.
2. The storage unit shall be closed at all times with the exception of entering or exiting the storage unit.

Deposit Paid by Check # _____ or Money Order # _____ in the amount of $ _____

In consideration for paying an additional $<u>N/A</u> per month, Resident may occupy **Parking Space Number <u>N/A</u>** in Building Number <u>N/A</u>, subject to the following conditions:

1. Only the resident's vehicle shall occupy the parking space.

_____          _____
Resident                                                   Agent for Owner

_____
Resident

31 May 03
Date

*New 7/20/00*

## GARAGE / STORAGE / PARKING ADDENDUM

Owner, through its manager, Colonial Properties, grants permission to __Terri Kittell__ in Apartment Number ___828_ to occupy the below space at _____750-A_____ on a month-to-month basis.

Subject to the following conditions:
1. Management assumes NO responsibility for personal belongings stored in said units.
2. Resident is responsible for all damages and agrees to reimburse management for all damages. Resident is responsible for the maintenance and care of the fixtures inside and may not remove them for any reason.
3. Storage of gasoline, propane, kerosene, and / or other flammable items is prohibited.
4. Manager reserves the right of entry into said units for inspection, repair, alteration, or other reasonable business purposes connected with the operation of the property.
5. Resident should contact an Insurance Agent to arrange appropriate fire and theft insurance for their personal property.
6. Resident agrees to notify Landlord in writing at least 30 days before expiration of the term of this Garage / Storage / Parking Addendum of an intention to terminate the Addendum.

In consideration for paying an additional $___42.50__ per month, Resident may occupy **Garage Number** ___A__ in Building Number ___750___, subject to the following conditions:

1. Only the resident's vehicle shall occupy the garage.
2. Resident is responsible for the remote control opener. A deposit of $_0.00___ will be charged at the time of rental. This deposit will be refunded if the remote is returned upon move-out and in operable condition.

Deposit Paid by Check # _____ or Money Order # _____ in the amount of $_____

In consideration for paying an additional $___0.00___ per month, Resident may occupy **Storage Number** ___N/A___, subject to the following conditions:

1. A deposit of $_____ will be charged at the time of rental. This deposit will be refunded if keys are returned upon move-out.
2. The storage unit shall be closed at all times with the exception of entering or exiting the storage unit.

Deposit Paid by Check # _____ or Money Order # _____ in the amount of $_____

In consideration for paying an additional $_____ per month, Resident may occupy **Parking Space Number** ___N/A___ in Building Number _____, subject to the following conditions:

1. Only the resident's vehicle shall occupy the parking space.

_Theresa m Kittell_           _[signature]_
Resident                     Agent for Owner

_Ronald g Connelly jr._
Resident

_5.2.03_
Date

*New 7/20/00*

# WASHER / DRYER ADDENDUM

This ADDENDUM ("Addendum") shall become a part of the RENTAL AGREEMENT, ("Contract") dated «05/20/2003» for apartment number «828» ("Unit"), between **Arringdon Development, Inc.** ("Owner") and ("Resident").

This Addendum also operates as a release, waiver, and indemnity agreement between Resident named below, and Owner as of the date set out below.

## RECITALS

1.     Owner desires to lease to Resident and Resident desires to lease from Owner certain Equipment ("Equipment") described below, in his / her / their apartment unit.

| RESIDENT(S): | EQUIPMENT: |
|---|---|

NAME(S) «Theresa M. Kittell»
    «Residents» _Donald A Donnelly Jr_

FULL SIZE: [ X ] STACKABLE: [ ]
MAKE: **GE**
WASHER MODEL#
SERIAL # «Washer»
DRYERMODEL#
SERIAL# «Dryer»
MONTHLY RENT: Included

UNIT # «828»

PRORATED 1ST AND LAST MONTH'S
RENT, IF APPLICABLE: **N/A**
DUE DATE: DUE AS PART OF YOUR
APARTMENT RENT ON OR BEFORE
THE 1ST OF THE MONTH WITH NO
GRACE PERIOD.

THE PARTIES AGREE AS FOLLOWS:

2.     Both parties desire to enter into this Agreement, including the Release, Waiver, and Indemnity provisions.

a.     <u>THE TERM OF THIS ADDENDUM IS FOR A MINIMUM OF THREE FULL MONTHS. FIRST AND LAST MONTH'S RENT SHALL BE PRORATED IF APPLICABLE. ALL FUTURE RENTAL SHALL BE CALCULATED FOR A FULL MONTH ONLY.</u>

b.     <u>UPON EXPIRATION OF THE INITIAL LEASE TERM, THIS ADDENDUM SHALL CONTINUE ON A MONTH-TO-MONTH BASIS, UNLESS CANCELLED BY EITHER THE RESIDENT OR OWNER, AFTER PROVIDING A 30-DAY NOTICE IN WRITING.</u>

c.     Resident agrees to pay the monthly rental amount (shown above) for the Equipment in addition to the rent charges as outlined in the Contract. Failure to pay these amounts shall cause a default of the Contract and this Addendum. Owner will pursue all remedies available (per the terms of the Contract) up to and including eviction and / or a money judgement. <u>Owner may refer delinquent accounts to a collection agency for disposition. The collection agency may report delinquent accounts to credit bureaus.</u>

d.     Resident will pay Owner for the repair of damages (other than normal wear and tear) to, or the loss of Equipment. Resident will clean Equipment before returning.

e.     Owner may remove the Equipment at a reasonable hour from the Resident's apartment if Owner believes the Equipment is being abused by Resident. Resident will pay Owner for the repair of damages to or loss of the Equipment other than normal wear and tear. In addition, Resident will be charged a Fifty dollar ($50.00) retrieval fee. If the 3-month initial rental period has not been completed, the remainder of that term will be accelerated, and this amount will become immediately due and payable.

*New 2/14/00*                       *Page 1 of 2*

f.   The Equipment will be used only by the Resident's household and only at the above address.

g.   The Equipment remains at all times the sole and exclusive property of Owner and no ownership interest, either legal or equitable, nor any possessory interest in the Equipment shall at any time attach to Resident.

h.   Owner agrees to repair the Equipment, if necessary, and keep the Equipment in satisfactory operation at no cost to Resident, except those damages caused by Resident or others. Resident is not authorized to repair the Equipment for any reason. Resident agrees to notify Owner in writing of any Equipment malfunction. Resident agrees to allow Owner, or its authorized agents, representatives, and employees reasonable access to the Equipment in Resident's apartment for the purpose of repair, maintenance, replacement, or removal of the equipment.

i.   By this instrument, Resident releases Owner and its agents, representatives and officers, directors, and employees of any and all claims, liabilities and actions, of whatever nature, resulting from or arising out of Resident's lease and use of the Equipment and the presence in Resident's unit of any representative of Owner for the repair, maintenance, or removal of the Equipment.

j.   By this instrument, Resident waives any and all claims, liabilities, and actions of whatever nature it may have against Owner, arising out of, or resulting from Resident's lease and use of the Equipment and the presence in Resident's apartment of any representative of Owner for the repair, maintenance, or removal of the Equipment.

k.   Resident agrees to indemnify Owner for any and all damages of whatever nature or kind arising out of the willful or negligent misuse of the Equipment while such Equipment is being leased by Resident.

l.   The parties acknowledge that this written addendum is the entire agreement of the parties relative to the Equipment in the above referenced unit. Any agreement that in any way varies the terms of this Addendum shall be unenforceable and completely void unless such agreement is in writing and signed by both parties.

DATED «Date» .

BY SIGNING THIS ADDENDUM, I / WE AM / ARE GRANTING OWNER PERMISSION TO PROVIDE TEMPORARY ACCESS TO MY / OUR APARTMENT TO REPRESENTATIVES OR AGENTS OF _____ Colonial Grand @ Arringdon _____ APARTMENTS FOR THE SOLE PURPOSE OF DELIVERING AND INSTALLING THE EQUIPMENT OUTLINED IN THIS ADDENDUM.

_____
Resident

_____
Resident

_____
Resident

_____
Resident

_____
Agent for Owner


*New 2/14/00*                                                                                            *Page 2 of 2*

## AMENITY ACCESS ADDENDUM

Date: «May 20, 2003»

Phone Number: _____

I (We) «Theresa M. Kittell»from Apartment Number «828» have received a swipe card and / or key necessary to access the property's facilities.

It is agreed that the Owner shall furnish <u>one</u> facility access key to the resident(s) residing in the apartment listed above.

Resident understands that failure to return all assigned keys and / or swipe cards upon move-out or loss of assigned keys and / or swipe cards will result in the following charges:

| Number | | | |
|---|---|---|---|
| 2 | Apartment Keys | $20 per key | |
| 1 | Mailbox Keys | $20 per key | Mailbox # 165 |
| N/A | Fitness Center Keys | $20 per key | Code # 45132 |
| N/A | Swipe Cards | $50 per card | |

Resident further understands that it is against Colonial Properties Trust policy to allow access to the facilities to anyone under the posted age that is not supervised by an adult at least twenty-one (21) years of age.

Resident agrees that all other terms of the Rental Agreement remain unchanged.

I give authorization to release a key to:

1. _____

2. _____

3. _____

_____  _____
Resident             Resident

_____  _____
Resident             Resident

Agent for Owner

*New 2/14/00*

# DRUG FREE HOUSING ADDENDUM

In consideration of the execution or renewal of a Rental Agreement of the dwelling unit identified in the Rental Agreement, Owner and Resident agree as follows:

1.  Resident, any member of the resident's household, or a guest or other person under the resident's control shall not engage in criminal activity, including drug-related criminal activity, on or near community premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U. S. C. 802)).

2.  Resident, any member of the resident's household, or a guest or other person under the resident's control shall not engage in any act intended to facilitate criminal activity, including drug-related criminal activity, on or near community premises.

3.  Resident or member of the household will not permit the dwelling unit to be used for, or to facilitate, criminal activity, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4.  Resident or member of the household will not engage in the manufacture, sale, or distribution of illegal drugs at any location, whether on or near the community premises or otherwise.

5.  Resident, any member of the resident's household, or a guest or other person under the resident's control shall not engage in acts of violence or threats of violence, including, but not limited to, the unlawful discharge of firearms, on or near the community premises.

6.  VIOLATION OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE RENTAL AGREEMENT AND GOOD CAUSE FOR TERMINATION OF TENANCY. A single violation of any of the provisions of this addendum shall be deemed a serious violation and a material noncompliance with the Rental Agreement. It is understood and agreed that a single violation shall be good cause for termination of the Rental Agreement. Unless otherwise provided by law, proof of violation shall not require criminal conviction.

7.  In case of conflict between the provision of this addendum and any other provisions of the Rental Agreement, the provisions of the addendum shall govern.


_Theresa McKittell_
Resident Signature

_____
Resident Signature

_Ronald a Wadley jr_
Resident Signature

_____
Resident Signature

_W. J. Mma_
Witness

_5/20/03_
Date


*Revised 2/14/00*

Resid☐     Theresa M. Kittell  Apt#  828

| Date   05/20/03 | | Date of Lease 05/20/03 through 05/31/03 | |
|---|---|---|---|
| Vacuum Apt. | $20.00 | Thermostat | Cost, plus labor |
| Sheet rock Repair, under 2 sq. ft. | $65.00 | Furniture Removal | $20.00 per item |
| Clean Light Fixtures | $5.00 each | Smoke Detector Replacement | $15.00 |
| Replace Fire Extinguisher | $25.00 | Washing Machine | $265.00 |
| Clothes Dryer | $245.00 | Screened Porch Repairs | Cost, plus labor |
| Vinyl Flooring | Cost, plus labor | Fitness Center Access Cards | $5.00 each |
| Keys | $10.00 each | Gate Access Cards | $10.00 each |
| Gate Access Beepers | $35.00 each | Cleaning of Apartment | Labor cost |
| Fireplace Repair | Cost, plus labor | | |
| **Range (accessories, if applicable)** | | **Refrigerator (accessories, if applicable)** | |
| Clean | $25.00 | Ice Trays | $7.00 |
| Heating Element Top | $20.00 | Racks | $20.00 |
| Control Knob | $5.00 each | Chiller Trays | $20.00 |
| Drip Pans | $12.50 | Vegetable Bin Top | $15.00 |
| Broiler Pan | $25.00 | Hydrator | $15.00 |
| Racks | $30.00 | Supports | $10.00 |
| Oven Door or Vent Hood | Cost, plus labor | Butter Door Racks | $10.00 |
| Replace Range | Cost, plus labor | Butter Dish | $10.00 |
| Light Bulb Cover Vent Hood | $12.50 | Thermostat Control | $25.00 |
| | | Bottom Molding | $20.00 |
| **Carpet** | | Remove Food from Refrigerator | Cost, plus labor |
| Cleaning, other than normal wear | Cost, plus labor | Replace/Repair Refrigerator | Cost, plus labor |
| Carpet Replacement / Repair | Cost, plus labor | Clean Refrigerator | $20.00 |
| **Doors** | | **Kitchen** | |
| Replace / Repair | Cost, plus labor | Hinges (set) | $2.00 |
| Door Stops | $2.00 each | Handles | $2.00 |
| Replace Door Frame | $125.00 | Counter Tops | Cost, plus labor |
| Replace Lock | $30.00 | Shelves | Cost, plus labor |
| Paint Door Facing / Jam | Cost, plus labor | Drawers | Cost, plus labor |
| Patio Screen Doors | Cost, plus labor | Doors | Cost, plus labor |
| Patio Door Glass | Cost, plus labor | Wipe Out Cabinets | $5.00 |
| | | Clean Counters | $5.00 |
| **Bathroom Replacement/Cleaning** | | Cabinet Damage | Repair/Replace |
| Commode (complete) | $150.00 | Clean Sink | $5.00 |
| Commode Tank Top | $40.00 | Mop Floor | $10.00 |
| Commode Seat | $15.00 | Sink Basket Strainer | $3.00 |
| Lavatory | $60.00 | Door | Cost, plus labor |
| Commode w/o Tank | $60.00 | Face bowl Stopper | $3.00 |
| Towel Rack | $10.00 | Cabinet | Cost, plus labor |
| Toilet Tissue Holder | $5.00 | Microwave (if applicable) | $150 |
| Soap Dish | $5.00 | | |
| Toothbrush Holder | $5.00 | **Electrical** | |
| Shower Head | $15.00 | Light Fixture (complete) | Replacement Cost |
| Flush Valves | $25.00 | Light Globe | Replacement Cost |
| Mop Bathroom | $10.00 | Switch Plate Cover | $1.50 each |
| Clean Tub | $10.00 | Socket Plate Cover | $1.50 each |
| Clean Bath Tile | $10.00 | Ceiling Fan | Cost, plus labor |
| Clean Toilet | $15.00 | | |
| **Window Replacement** | | **Other Damages** | |
| Window Screens | $25.00 each | _____ | |
| Window Blinds | $25.00 each | _____ | |
| Window Glass | Cost, plus labor | _____ | |
| Repairing Window | Cost, plus labor | _____ | |
| Window Pane | $50.00 each | _____ | |

Charges for repairs of an unusual nature will be actual cost of material, supplies, and labor to repair such damages.

_Theresa M Kittell_  _Ronald a xxxxx_  _____  _____

Resident Signature      Resident Signature      Resident Signature      Agent for Owner

_Revised 2/1/00_

Pet Addendum

Addendum to lease dated ___05/20/03___ between ___Arrlngdon Development, Inc.___, as Lessor, and ___Theresa M. Kittell___ Lessee, for Apartment # ___828___.

It is hereby agreed that Lessee may have only 2 pet(s) in the apartment. All pets must be approved in writing by management. A pet is defined as a common household pet such as a dog, cat, fish, hamster, or bird. Reptiles and birds of prey are not considered household pets and are not allowed. A pet may weigh no more than ___n/a___ pounds and stand no more than ___n/a___ inches at the shoulder once full-grown. Dogs of a class with a known vicious propensity or aggressive propensity shall not be permitted. Examples of these breeds (but not exclusive): Doberman Pinchers, Rottweilers, Chow-Chow, and Pit Bulls. However, Seeing Eye dogs and other assisted living animals or pets may be permitted.

The Lessee agrees to pay Lessor a deposit of $___0___ a non-refundable fee of $___0___, and / or a charge of $___0___ per month as pet rent in addition to the lease rent. The deposit, if any, which is non-interest bearing, is to be held by the Lessor as security for any damage by the above referenced pet. Lessee shall be entitled to the return of said deposit if premises are left in the same condition as rented and all lease provisions have been fulfilled. This pet deposit and / or fee is not advance rental, and Lessee may not deduct any portion of the pet deposit and / or fee from rent due to Lessor by Lessee.

Lessee further agrees that :
1.  Pets are to be walked in designated areas away from the buildings and sidewalks.
2.  Pets are to be picked up after with proper disposal tools or disposal bags and disposed of in the standard garbage receptacles.
3.  Pets must be kept on a leash at all times while outside the apartment.
4.  Pets will not be left unattended on patios, balconies, or grounds.
5.  Pets will not be permitted to bark or make other noise so as to disturb other residents.

It is the responsibility of the Lessee to properly care for the pet and to comply with all state and local laws concerning certifications and vaccinations. It is strongly recommended that the Lessee provide emergency information to the Lessor in case of emergency involving the above referenced pet(s).

This pet addendum is part of (or an addendum to) the Rental Agreement between Owner, Lessor, and Lessee. If any rule or provision of this pet addendum is violated, Owner and Lessor shall have the right to demand removal of the pet from the community.

It is strongly recommended that Lessee secure adequate insurance to protect himself / herself and their pet against any occurrences which may arise. It is further expressly understood and agreed that this Pet Addendum for responsible pet ownership is entered into solely for the benefit of the parties herein and that no benefits, rights, duties, or obligations are intended or created as to third parties not a signatory hereto.

These addendum guidelines may be amended from time to time by the Lessor.

Initial one of the following:
_____ I have no pet.
__Tmc__ Pet is __10__ pounds.

Type of Pet ___Dog___ Breed __Shitzu__ Mix __✓__ Color __brown__ Weight __10 lb__

Height _____ Name __Taz Cooper__ Age __5 yrs__ Male __x__ Female _____

__Theresa M Kittell__ __5/20/03__
Lessee                                          Date

__Ronald ax another jr__ __20 May 03__
Lessee                                          Date

Deposit Paid by Check # _____ or Money Order # _____ in the amount of $_____ on _____

Fee Paid by Check # _____ or Money Order # _____ in the amount of $_____ on _____

*Revised 2/14/00*

# SATELLITE DISH ADDENDUM

1. Resident will be required to have an additional security deposit of $150.00 for any and all damages that may occur from installation or removal of the dish. Should damages exceed this amount, Resident will be required to pay additional charges.

2. Satellite dishes cannot be larger than one meter (slightly less than three (3) feet) in diameter and may be installed **ONLY** with the express written consent of Management of Colonial Properties Trust.

3. Consent for the installation of dishes shall not be unreasonably withheld provided Resident makes proper written application to Management for said installation and Resident agrees to abide by all FCC rules and regulations and all rules of Colonial Properties Trust.

4. Dishes are allowed only within the apartment's patios and balconies and cannot be mounted in common areas, including stairwells, breezeways, roofs, and / or trees.

5. Dishes cannot be installed on exterior walls or attached to brick or siding.

6. Dishes must be securely mounted and may not extend beyond the edge of the patio or balcony to prevent injury by falling off the building.

7. Installation may not damage premises beyond ordinary wear and tear including holes drilled in railings, exterior walls, or any other location where holes might impair the building's weatherproofing or there is a risk of striking electrical or water lines.

8. Dish must be professionally installed and our maintenance staff may supervise and approve the installation.

9. Dish must be grounded according to National Electrical codes and no additional rooftop or external antennas can be used to obtain local programming.

10. Resident intending to install a dish shall secure and maintain public liability insurance, and shall furnish proof of such to Management prior to installation of the dish, and shall periodically furnish proof that such liability insurance remains in force until the dish is removed from the premises. All such policies shall name Colonial Realty Limited Partnership and Colonial Properties Trust as an "Additional Insured".

11. Initial one of the following:

    _____XTmι̇ϲ̆_ I have no satellite dish at this time.

    _____ I do have a satellite dish at this time.

_Theresa M. Kittell_
Resident(s)

_Date_ 5/20/2003

_____
Management Representative

_5/20/03_
Date

Deposit Paid by Check # _____ or Money Order # _____ in the amount of $_____
_____ on _____.

*Revised 4/10/00*

**RENT** – Rent is due and payable in advance on or before the first day of each calendar month. Rent received after the 5th day of the month is subject to a late charge in accordance with your lease agreement. All rent should be paid by personal check, money order or cashier's check. NOTE: For safety reasons, we will be unable to accept Cash.

**VACANT NOTICES** – A written thirty day notice must be received by Management prior to vacating.

**WINDOWS** – To preserve the uniform appearance of the community, only white window coverings should be used.

**GROUNDS** – We would appreciate your cooperation in keeping the community free of litter. Please refrain from disposing cigarette butts on the grounds.

**MAINTENANCE REQUESTS** – All requests for maintenance services should be directed to the Management Office. Residents in need of prompt maintenance assistance after business hours should call  919/490-4663  .

**EXTERMINATING** – Routine pest control is provided and required for all apartments. It is the responsibility of the pet owners to properly restrain or remove pets to prevent interference of services.

**PARKING** – Adequate parking spaces are provided for our residents. Please make sure that all vehicles are parked within the designated spaces. All vehicles should be sightly, operable, and properly registered (including, but not limited to, current tags and / or license plates). No vehicles should be parked on grass or along curbs of the community. Boats and RV's are to be parked in designated areas only (if available) and must be registered with the Management Office.

**SOLICITORS** – Solicitors are not permitted in the community. Residents are asked to report any solicitors to the management office.

**CAR REPAIRS** – To maintain a pleasing appearance, we ask that residents schedule vehicle repairs away from the community.

**NUMBER OF OCCUPANTS** – The number of occupants is limited to the terms of the Rental Standards, lease application, and Rental Agreement.

**EXTENDED VISITORS** – Residents are asked to notify management if a guest is expected to stay longer than 14 days.

**GRILLS** – Colonial Properties Trust policy prohibits the storage or use of barbecue, propane, and electric grills on patios, balconies, or near heavily wooded areas.

**ANTENNAS** – For your safety and the appearance of the community, we do not allow any kind of outside antennas to be installed. The policy regarding satellite dishes may be obtained from the Management Office.

**NOISE** – We have done everything possible in planning this community to sound insulate your apartment for privacy. Your consideration of your neighbors when using televisions, stereos, stairwells, etc. will result in their consideration of you.

**SPEEDING** – For the safety of everyone, please observe the posted speed limit within the apartment community.

**PUBLIC AREAS** – For the safety of all residents and to preserve the appearance of the community, absolutely no personal belongings should be stored in walkways, breezeways, or entranceways.

**KEYS** – Management retains a key to your apartment and will enter your apartment to perform requested maintenance, preventative maintenance, and pest control. Fire code prevents a resident from altering or changing locks.

**RECREATIONAL AREAS** – For your safety and the safety of your guests, please follow the posted rules located at each recreational amenity. Management assumes no liability in the use of these facilities.

**GARBAGE** – Waste containers are conveniently located at the community for your use. All refuse should be bagged and placed inside the containers. To prevent litter within the community, we must ask that residents use a container with available space. All boxes are to be broken down and placed in cardboard containers if provided, otherwise broken down and placed inside the standard waste containers. Furniture, mattresses, and other large articles are prohibited in or around waste containers. To alleviate potential problems with pests and animals, trash will not be permitted outside of front doors or on balconies. Those in violation will be fined accordingly.

**PETS** – In order to keep the grounds clean, beautiful and sanitary, all pets must be walked on the outside perimeter of the community. They are to be on a leash at all times when outside the apartment and must be picked up after with appropriate disposal tools or bags. All pet waste should be placed in standard waste containers.

**PATIOS / BALCONIES** – Thriving plants and attractive outdoor furniture only.

**I HAVE READ AND UNDERSTOOD THE ABOVE RULES AND REGULATIONS.**

_____  ( _____
RESIDENT                                        MANAGEMENT

_____       5/20/03
RESIDENT                                        DATE

«828»
APARTMENT #

Revised 05/21/02

# STATE OF NORTH CAROLINA

Durham County

`FILED`
`2004 APR -7 AM 9: 26`
`DURHAM COUNTY C.S.C.`

BY_____

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name Of Plaintiff
Ronald A. Donnelly, Jr. and Theresa M. Kittell

Address

City, State, Zip

## CIVIL SUMMONS

☐ ALIAS AND PLURIES SUMMONS

G.S. 1A-1, Rules 3, 4

**VERSUS**

Name Of Defendant(s)
Arringdon Development, Inc.

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

## To Each Of The Defendant(s) Named Below:

Name And Address Of Defendant 1

Arringdon Development, Inc., by and through its registered agent,
Corporation Service Company
327 Hillsborough Street
Raleigh, NC 27603

Name And Address Of Defendant 2

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)
Kimberly R. Wilson
Lewis & Roberts, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27619

| Date Issued | Time |
|---|---|
| APR 0 7 2004 | 9:26 ☒ AM ☐ PM |

Signature

☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

| ☐ ENDORSEMENT | Date Of Endorsement | Time |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | ☐ AM ☐ PM |

Signature

☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

# STATE OF NORTH CAROLINA

_FILED_

Durham County 2004 APR -7 AM 9: 26

DURHAM COUNTY. C.S.C.

BY_____

`4CV501749`

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff* <br> Ronald A. Donnelly, Jr. and Theresa M. Kittell | |
| *Address* | **CIVIL SUMMONS** |
| *City, State, Zip* | ☐ **ALIAS AND PLURIES SUMMONS** |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)* <br> Arringdon Development, Inc. | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| Arringdon Development, Inc., by and through its registered agent, <br> Corporation Service Company <br> 327 Hillsborough Street <br> Raleigh, NC 27603 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)* <br> Kimberly R. Wilson <br> Lewis & Roberts, PLLC <br> 1305 Navaho Drive, Suite 400 <br> Raleigh, NC 27619 | *Date Issued* <br> APR 0 7 2004 | *Time* <br> 9:26 ☒ AM ☐ PM |
|---|---|---|
| | *Signature* <br> **Lisa P. Strickland** <br> **Deputy CSC** | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT <br> This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* <br> ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration. and, if so. what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

NORTH CAROLINA     FILED     IN THE GENERAL COURT OF JUSTICE

DURHAM COUNTY    2004 APR -7 AM 9:27    SUPERIOR COURT DIVISION

FILE NO. 4CVS01749

RONALD A. DONNELLY, JR., )
and THERESA M. KITTELL, )
        Plaintiffs,    BY    )     **PLAINTIFFS FIRST SET OF**
                        )     **INTERROGATORIES AND**
v.                         )     **REQUEST FOR PRODUCTION OF**
                        )     **DOCUMENTS TO DEFENDANT**
ARRINGDON DEVELOPMENT,   )     **ARRINGDON DEVELOPMENT, INC.**
INC.,                     )
        Defendant.      )

Clerk's
Copy

NOTICE is hereby given to ARRINGDO?

     A.     Answer under oath Interrogatories          lays after

service hereof and in accordance with Rule 33 of the North Carolina Rules of Civil Procedure.

     B.     Produce and permit plaintiff or an employee of Lewis & Roberts,

P.L.L.C., acting on behalf of plaintiffs to inspect, sample, test and/or copy the requested

documents or tangible things in accordance with Rule 34 of the North Carolina Rules of Civil

Procedure at 10:00 a.m. at the offices of Lewis & Roberts, P.L.L.C., 1305 Navaho Drive, Suite

400 Raleigh, North Carolina, 27609-7482, on the date forty-five (45) days after service hereof.

In lieu of said production for copying the defendant or attorney may attach hereto exact copies of

the requested documents clearly designating to which request each said document pertains.

     For the purpose of these Interrogatories and Requests for Production of

Documents, the meaning of the word "Document" shall include but not be limited to writings,

drawings, graphs, charts, photographs, reports, phonograph records, and other data compilations

from which information can be obtained or translated, if necessary, through detection devices or

other equipment into reasonable usable form.

{00197121.DOC}

If objection is taken to any of the following interrogatories, or if an interrogatory is otherwise not answered in full, state the specific grounds therefor and answer the interrogatory to the extent to which there is no objection. If any information responsive to any of the following interrogatories is withheld under any claim of privilege or the work product doctrine, fully describe or identify the information withheld, stating in detail the grounds upon which it is withheld.

Each interrogatory shall be deemed continuing in nature as provided in the North Carolina Rules of Civil Procedure. By timely and appropriate amendment supply such additional answers as are necessary to insure the truthfulness, fullness and completeness of your answers.

When the answering party does not have personal knowledge or information sufficient to form a belief with respect to the information required, then the request includes such knowledge or information that the answering party or answering party's attorney may have, regardless of whether or not such information is sufficient to form a belief.

## DEFINITIONS AND INSTRUCTIONS

A.      Arringdon is required when answering these interrogatories, to furnish all information that is available to it, its employees, attorneys, or agents, or anyone acting on behalf of its attorneys or agents. All references to Arringdon include its agents, attorneys, and employees.

B.      These interrogatories are deemed to be continuing, such as to require Arringdon to file and serve supplemental answers should it learn of additional information called for by these interrogatories between the time of trial and the time its answers are filed. Said supplemental answers are required to be served within a reasonable time after the discovery of such additional information.

C.    You are under a duty to promptly amend prior responses to these interrogatories if you obtain information upon the basis of which you know the response was incorrect when made or you know the response, though correct when made, is no longer true.

D.    "You" or "your" means Arringdon Development, Inc., its agents, partners, attorneys, servants, employees, assignees, lessees, affiliates or anyone acting on behalf of them, and any affiliate, subsidiary, parent or related corporation, partnership or entity, and anyone acting for or on behalf of any such subsidiary, related corporation, parent, partnership, entity or natural person.

E.    "Person" means natural persons, corporations, partnerships, sole proprietorships, associations, federations, government agencies, or any other kind of entity.

F.    "Identify" when used with respect to an individual, means to state the person's full name and any aliases now or previously used by such person, to state and identify the person's present occupation and principal business affiliation and any other business affiliations; present home address and business address or addresses; and present and past business affiliations or relations including those (if any) with any of the parties to this civil action.

G.    "Identify" when used with respect to an expert, means to state the individuals' name or other means of identification, address, telephone number, professional or occupation, the field in which he/her is allegedly is an expert.

H.    "Identify" when used in reference to a person (as defined above) other than a natural person, means to state its full name; the nature of its organization including the name or the state under which it was organized; its address(es); the address(es) of its principal place(s) of business; its principal line(s) of business; and identify all known natural persons who serve as officers, directors, partners, owners, or in other supervisory or ownership capacity in said

organization. If any of the above information is not available to Arringdon, state any other available means of identifying such person.

I. "Identify" when used with respect to a document, means to describe the document with sufficient particularity to withstand valid objections to such description appearing in a subpoena duces tecum or in a motion for production of such document, including, but not limited to, the type of document (e.g., "letter"), date, author, and addresses, and state the name, address, and business relationship (if any) to each party in this action, of each and every person who has such document or any drafts or copies thereof in his or her or its possession, custody or control, and the location of such documents. A request herein that a document be identified or described calls for the following additional specific information concerning it:

1. As to each document in the nature of a written communication mentioned or referred to in an answer, a statement of:

    a.    its nature (example: contract, report, letter, memorandum, etc.);
    b.    the date it was written;
    c.    the date it was received;
    d.    the identity of the party sending it;
    e.    the identity of the person to whom it was sent;
    f.    a statement of the subject matter and substance of the communication;
    g.    the identity of each and every person or persons who prepared it or participated in preparing it in any way; and
    h.    the name and address and last known address of the person who has custody of it as of the date these interrogatories were answered.

2. As to each document other than a document in the nature of a written communication mentioned or referred to in an answer, a statement of:

    a.    its nature (example: contract, asset share study, memorandum, evaluation, report, photo, computer program, recording, etc.);
    b.    its title, if any;
    c.    the date if was prepared;
    d.    the identity of the person or persons who prepared it or participated in preparing it in any way or signed it;
    e.    a statement of its subject matter and substance; and
    f.    the name and last known address of the person who presently has custody of it.

J.  The word "document" or "documents" when used herein shall include, without limitation, the original and any non-identical copy of any written, recorded, or graphic matter, however produced or reproduced, whether or not in the possession, custody or control of you and whether or not claimed to be privileged against discovery on any ground, including, but no limited to, reports, annual reports, records, minutes, meeting notices, agendas and summaries pertaining to all meetings, formal or informal, handouts, diaries, calendars, summaries, studies, research and reports, lists, computer records, memoranda, notes, correspondence, schedules, sound recordings, films, transcripts of telephone conversations or other conversations or conferences, books, pamphlets, letters, personal notes, telegraphic messages, carbon copies, electronic or mechanical transmissions, whether written or electronically stored, data sheets, financial statements, canceled and uncancelled checks, drafts, certificates of deposit, invoices, accounting statements, tickets, expense records, vouchers, working papers, drafts of contracts, drafts of letters, charts, printings, airplane tickets, flight plans, income tax returns, phonograph records, maps, plats, microfilms, microfiches, micro prints, photographic negatives, photographic prints or slides, receipts, drawings, deposit slips, banking records, journals, account books, telephone logs, telephone message records, time slips or any other form of writing or record of any kind.  "Document" shall include official corporate documents as well as documents maintained personally in handwriting or otherwise by Arringdon or any employee, agent, attorney, assignee, or lessee thereof. "Document" shall also include all drafts or versions thereof.

K.  If any documents covered by this request are withheld under a claim of privilege, furnish a list specifying each document for which privilege is claimed, together with the following information as to each such document: the name and job title of the author(s); the name and job title of each recipient and person to whom the document or a copy thereof was

furnished; the date of the document; the subject matter of the document; the number of pages of the document; where the documents and all copies of the document were filed or stored and the names of all individuals who had access to such files; the basis on which privilege is claimed; and the paragraph of this request to which the document is responsive.

## INTERROGATORIES

1.    Please state the full name, current address, current telephone number and job title of the persons responding to these interrogatories on behalf of Defendant Arringdon Development, Inc. (hereinafter "Arringdon").

**ANSWER:**

2.    Please state the date in which construction began on Colonial Grand at Arringdon located at 5710 Arringdon Park Drive in Morrisville, North Carolina.

**ANSWER:**

3.    Please state the name, address and telephone number of the general contractor for Colonial Grand at Arringdon in Morrisville, North Carolina.

**ANSWER:**

4.    Please state the name, address and telephone number of all subcontractors who performed work at Colonial Grand at Arringdon in Morrisville, North Carolina

**ANSWER:**

5.    Please identify all apartments or other structures at Colonial Grand which have experienced water intrusion, moisture or mold problems since November, 2002.

**ANSWER:**


6.     Please identify the person(s), or company(ies) responsible for the construction of the balconies (and/or landings) which are attached to upper level apartments. If more that one company has been involved in the construction of the balconies (and/or landings), please identify all companies involved.

     **ANSWER:**


7.     Please state whether any of the balconies (and/or landings) ever have been replaced, repaired or reconstructed. If so, please identify all apartments in which balconies (and/or landings) have been replaced, repaired or reconstructed since the opening of Colonial Grand at Arringdon.

     **ANSWER:**


8.     Please state with specificity the type of exterior cladding which is on the Colonial Grand at Arringdon apartments, including the manufacturer and model of the cladding material used. Identify all involved in its design, installation, inspection, repair, removal, and maintenance.

     **ANSWER:**


9.     Please identify all policies of insurance in place since January of 2002 for Arringdon Development, Inc. Please include the name of the insurer, policy number and applicable limits of liability.

     **ANSWER:**

10.    Please identify all persons (maintenance staff and/or subcontractors) who have performed maintenance, repair and/or reconstruction work at apartment 828 Colonial Grand. This would include work performed on the interior and exterior of said apartment.

**ANSWER:**

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.    Please produce any and all correspondence between Colonial Property Services, Inc. and Arringdon in regard to apartment 828 at Colonial Grand since November, 2002 inclusive of the time in which plaintiffs were tenants.

**RESPONSE:**

2.    Please produce any and all contracts executed between Arringdon and Colonial Property Services, Inc. for the last three years.

**RESPONSE:**

3.    Please produce any and all work orders for apartment 828 which reflect all work performed inside and/or outside of the apartment since November, 2002. This would include work orders executed during all times the apartment was vacant or occupied with tenants.

**RESPONSE:**

4.    Please produce the personnel file of Gabby Mossman at Colonial Property Services, Inc.

**RESPONSE:**

{00197121.DOC}                                         8

5. Please produce all engineering reports for Colonial Grand.

**RESPONSE:**


6. Please produce all environmental reports, correspondence with consultants, etc.

**RESPONSE:**


This the 5th day of April, 2004.

LEWIS & ROBERTS, PLLC

Kimberly R. Wilson
Attorney for Plaintiffs
1305 Navaho Drive, Suite 400
Raleigh, North Carolina 27609
Telephone: (919) 981-0191
Facsimile: (919) 981-0431


EVERETT, GASKINS, HANCOCK & STEVENS, LLP


E.D. Gaskins, Jr.
Michael J. Tadych
Post Office Box 911
Raleigh, North Carolina 27602
Telephone: (919) 755-0025
Facsimile: (919) 755-0009

NORTH CAROLINA      FILED   IN THE GENERAL COURT OF JUSTICE

                            SUPERIOR COURT DIVISION

DURHAM COUNTY     2004 APR 30 PM 2: 53   FILE NO. 04 CVS 1749

                       DURHAM COUNTY C.S.C.

RONALD A. DONNELLY, JR.,
and THERESA M. KITTELL,
        Plaintiffs,          )
                       )
v.                     )       ACCEPTANCE OF SERVICE
                       )
ARRINGDON DEVELOPMENT,      )
INC.,                    )
        Defendant.        )

The undersigned states that he has been engaged to represent Defendant

Arringdon Development, Inc. in this action; that he is authorized to accept service of the

Summons and Complaint on behalf of the Defendant Arringdon Development, Inc. and

that he hereby accepts and acknowledges service of the Summons and Complaint on said

Defendant on this the __27th__ day of April, 2004.

                                               J. Donald Cowan, Jr.
                                               Angela L. Little
                                               Smith Moore, LLP
                                               300 North Greene Street, Suite 1400
                                               Greensboro, NC 27401
                                               (336) 378-5200
                                               *Attorneys for Defendant Arringdon*
                                                        *Development, Inc.*

{00200741.DOC}

NORTH CAROLINA

DURHAM COUNTY

FILED

2004 MAY 26 PM 4: 25

DURHAM COUNTY, C.S.C.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-01749

RONALD A. DONNELLY, JR., and
THERESA M. KITTELL,

Plaintiffs,

v.

ARRINGDON DEVELOPMENT, INC.,

Defendant.

**MOTION FOR EXTENSION OF TIME
TO RESPOND TO THE COMPLAINT
[EXTM]**

NOW COMES defendant Arringdon Development, Inc. (hereinafter referred to as "Arringdon"), by and through counsel, pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure, and hereby moves for an extension of time within which to respond to plaintiffs' complaint in this action. In support of this motion, Arringdon respectfully shows the Court as follows:

1.      Plaintiffs' complaint was filed on or about 7 April 2004, and counsel for Arringdon accepted service of the complaint on 27 April 2004. Therefore, Arringdon's response is currently due on 27 May 2004. The time for Arringdon's response has not yet expired.

2.      No prior extensions of time to respond to this complaint have been obtained by Arringdon. Arringdon needs an extension of time through and including 28 June 2004 within which to answer or otherwise respond to plaintiffs' complaint, in order to allow it to gather the information necessary to prepare its response.

3.      Accordingly, Arringdon requests an extension of time to and including 28 June 2004 within which to answer or otherwise respond to plaintiffs' complaint.

4. A proposed order granting Arringdon's motion for extension of time is attached to this motion.

WHEREFORE, Arringdon hereby respectfully requests an extension of time to respond to plaintiffs' complaint, through and including 28 June 2004.

This the 26th day of May, 2004.

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Angela L. Little
N.C. State Bar No. 27281
Laura M. Loyek
N.C. State Bar. No. 28708

Attorneys for Arringdon Development, Inc.

OF COUNSEL:

SMITH MOORE LLP
P.O. Box 21927 [27420]
300 N. Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

SMITH MOORE LLP
2800 Two Hannover Square
Post Office Box 27525 (27611)
Raleigh, North Carolina 27601
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

2

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion for Extension of Time and proposed order have been duly served upon the plaintiffs by depositing a copy thereof in the United States Mail, first-class, postage prepaid, addressed to the following counsel of record:

        Kimberly R. Wilson
        Lewis & Roberts, PLLC
        1305 Navaho Drive, Suite 400
        Raleigh, NC 27609

This the 26th day of May, 2004.

Laura M. Loyek

NORTH CAROLINA

F'LED

2004 MAY 26 PM 4: 26

DURHAM COUNTY, C.S.C.

IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

04-CVS-01749

DURHAM COUNTY

RONALD A. DONNELLY, JR., and
THERESA M. KITTELL,

        Plaintiffs,

        v.

ARRINGDON DEVELOPMENT, INC.,

        Defendant.

**ORDER ALLOWING MOTION
FOR EXTENSION OF TIME**

**[ORD]**

THIS CAUSE COMING ON TO BE HEARD before the undersigned, upon motion of

defendant Arringdon Development, Inc. for an extension of time to and including 28 June 2004

within which to respond to plaintiffs' complaint, and it appearing that the motion of the

defendant is well taken and should be granted;

IT IS, THEREFORE, ORDERED that Arringdon Development, Inc. shall have an

extension of time to and including 28 June 2004, within which to serve its response to plaintiffs'

complaint.

This the 26 day of May, 2004.

                              Clerk of Superior Court

NORTH CAROLINA

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-01749

DURHAM COUNTY

RONALD A. DONNELLY, JR., and
THERESA M. KITTEEL,

Plaintiffs,

v.

ARRINGDON DEVELOPMENT, INC.,

Defendant.

**MOTION FOR EXTENSION OF TIME
TO RESPOND TO PLAINTIFFS'
DISCOVERY
[EXTM]**

NOW COMES defendant Arringdon Development, Inc. ("Arringdon"), by and through

counsel, pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure, and hereby moves

for an extension of time of thirty (30) days within which to respond to Plaintiffs' First Set of

Interrogatories and Request for Production of Documents to Defendant Arringdon Development,

Inc. In support of this motion, Arringdon respectfully shows the Court as follows:

1.      The time for Arringdon to respond to plaintiffs' discovery requests has not yet

expired.

2.      Arringdon accepted service of Plaintiffs' First Set of Interrogatories and Request

for Production of Documents to Defendant Arringdon Development, Inc., together with the

summons and complaint, on 27 April 2004. Pursuant to Rules 33(a) and 34(b) of the North

Carolina Rules of Civil Procedure, Arringdon's responses are due within forty-five (45) days

after service of the summons and complaint, requiring a response on or before 11 June 2004.

3.      No prior extensions of time to respond to plaintiffs' discovery requests have been

obtained by Arringdon. Arringdon needs an extension of time of thirty (30) days within which to

respond to the plaintiffs' discovery requests, in order to allow Arringdon to gather the

information necessary to prepare its responses.

4. Accordingly, Arringdon requests an extension of time, to and including 12 July 2004, to respond to Plaintiffs' First Set of Interrogatories and Request for Production of Documents to Defendant Arringdon Development, Inc.

5. A proposed Order Allowing Motion for Extension of Time is attached to this Motion.

WHEREFORE, Arringdon hereby respectfully requests an extension of time to respond to Plaintiffs' First Set of Interrogatories and Request for Production of Documents to Defendant Arringdon Development, Inc., through and including 12 July 2004.

This the __11th__ day of June, 2004.

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Angela L. Little
N.C. State Bar No. 27281
Laura M. Loyek
N.C. State Bar. No. 28708

Attorneys for Arringdon Development, Inc.

OF COUNSEL:

SMITH MOORE LLP
P.O. Box 21927 [27420]
300 N. Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

SMITH MOORE LLP
2800 Two Hannover Square
Post Office Box 27525 (27611)
Raleigh, North Carolina 27601
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

2

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion for Extension of Time and proposed order have been duly served upon the plaintiffs by depositing a copy thereof in the United States Mail, first-class, postage prepaid, addressed to the following counsel of record:

> Kimberly R. Wilson
> Lewis & Roberts, PLLC
> 1305 Navaho Drive, Suite 400
> Raleigh, NC 27609

This the 11th day of June, 2004.

Laura M. Loyek

NORTH CAROLINA

DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-01749

RONALD A. DONNELLY, JR., and
THERESA M. KITTELL,

Plaintiffs,

v.

ARRINGDON DEVELOPMENT, INC.,

Defendant.

ORDER ALLOWING MOTION
FOR EXTENSION OF TIME

[ORD]

THIS CAUSE being heard by the undersigned on the motion of Arringdon Development,

Inc. ("Arringdon") for an order extending the time in which to respond to Plaintiffs' First Set of

Interrogatories and Request for Production of Documents to Defendant Arringdon Development,

Inc., pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure, and it appearing to the

Court that the time for responding has not yet expired and that the motion should be allowed for

good cause;

IT IS, THEREFORE, ORDERED that Arringdon's time for responding to Plaintiffs' First

Set of Interrogatories and Request for Production of Documents to Defendant Arringdon

Development, Inc. be extended to and including 12 July 2004.

This the _11_ day of June, 2004.

_____, asst
Clerk of Superior Court

NORTH CAROLINA

FILED

2004 JUN 28  A 4:35

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-01749

DURHAM COUNTY

RONALD A. DONNELLY, JR., and
THERESA M. KITTELL,

      Plaintiffs,

v.

ARRINGDON DEVELOPMENT, INC.,

      Defendant.

**ANSWER**
**[ANSW]**

Defendant Arringdon Development, Inc. (hereinafter referred to as "Arringdon"),

responding to the numbered paragraphs of plaintiffs' complaint, alleges and states as follows:

<u>**ALLEGATIONS REGARDING "PARTIES"**</u>

1.     The allegations contained in paragraph 1 of plaintiffs' complaint are admitted

upon information and belief.

2.     The allegations contained in paragraph 2 of plaintiffs' complaint are admitted

upon information and belief.

3.     The allegations contained in paragraph 3 of plaintiffs' complaint are admitted.

4.     It is admitted that Arringdon was the owner and developer of the residential

development known as Colonial Grand at Arringdon in Morrisville, North Carolina ("Colonial

Grand at Arringdon") during the time plaintiffs resided there.  Except as expressly admitted

herein, the allegations contained in paragraph 4 of plaintiffs' complaint are denied.

## ALLEGATIONS REGARDING "FACTUAL BACKGROUND"

5.    To the extent that the allegations contained in paragraph 5 purport to recite the terms of the document referenced in paragraph 5, Arringdon responds that the document speaks for itself. With the exception of the first page, it is admitted that Exhibit A is a true and accurate copy of the "Residential Lease Agreement" between Arringdon and plaintiffs on or about 20 May 2003. Except as expressly admitted herein, the allegations contained in paragraph 5 of plaintiffs' complaint are denied.

6.    To the extent that the allegations contained in paragraph 6 purport to recite the terms of the document referenced in paragraph 6, Arringdon responds that the document speaks for itself. It is admitted that paragraph 17 of said document contains the following language: "MAINTENANCE: Landlord and Resident agree that Landlord shall be responsible for all maintenance of the Premises, including, but not limited to, HVAC, electrical, mechanical, plumbing, exterior and interior structural, lawn care, lawn fertilizing, pool care, and regular pest control. . . ." Except as expressly admitted herein, the allegations contained in paragraph 6 of plaintiffs' complaint are denied.

7.    The allegations contained in paragraph 7 of plaintiffs' complaint state a conclusion of law to which no response is required. To the extent that the allegations purport to recite the contents of N.C. Gen. Stat. § 42-42(a), Arringdon responds that the statute speaks for itself. Except as expressly admitted herein, the allegations contained in paragraph 7 are denied.

8.    It is admitted, upon information and belief, that plaintiffs moved into Apartment 828 at Colonial Grand at Arringdon ("the Apartment") on or after 20 May 2003. The remaining allegations contained in paragraph 8 of plaintiffs' complaint are denied.

9.    The allegations contained in paragraph 9 of the plaintiffs' complaint are denied.

10. It is admitted that one or more mid-landings at Colonial Grand at Arringdon was replaced at or about the time plaintiffs leased the Apartment. Except as expressly admitted herein, the allegations contained in paragraph 10 of plaintiffs' complaint are denied.

11. Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of plaintiffs' complaint, which are therefore denied.

12. Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of plaintiffs' complaint, which are therefore denied.

13. Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of plaintiffs' complaint, which are therefore denied.

14. Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of plaintiffs' complaint, which are therefore denied.

15. It is admitted that on or about 7 August 2003, plaintiff Donnelly mentioned an odor in the Apartment to Colonial Property Services, Inc. Property Manager Gabby Mossman. Except as expressly admitted herein, the allegations contained in paragraph 15 of plaintiffs' complaint are denied.

16. It is admitted, upon information and belief, that plaintiffs temporarily vacated the Apartment on or about 15 August 2003 and stayed in a Guest Suite Apartment at Colonial Grand at Arringdon until 18 August 2003. It is further admitted that plaintiffs again occupied a Guest Suite Apartment for some time and no longer physically resided in the Apartment after on or about 2 September 2003. It is further admitted that plaintiffs left behind personal possessions in the Apartment. Except as expressly admitted herein, the allegations contained in paragraph 16 of plaintiffs' complaint are denied.

17. It is admitted that, on or about 15 August 2003, Colonial Property Services, Inc.

Maintenance Supervisor Ben Trevathan inspected the area in the front bedroom closet of the Apartment and observed no visible mold, as reflected by the work order. It is further admitted that Mr. Trevathan pulled back the carpet in the front bedroom closet and applied a mildicide to the floor in this area. It is further admitted that Mr. Trevathan ran bleach in the dishwasher. Except as expressly admitted herein, the allegations contained in paragraph 17 of plaintiffs' complaint are denied.

18. It is admitted, upon information and belief, that a copy of a Material Safety Data Sheet for "Milgo Plus" was provided to plaintiffs. Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of plaintiffs' complaint, which are therefore denied.

19. It is admitted that Ben Trevathan and Colonial Property Services, Inc. Assistant Manager Holly Beal inspected the Apartment on 21 August 2003. It is further admitted that a hole was cut into the wall in the front bedroom closet so that the area behind the wall could be inspected. It is further admitted that Mr. Trevathan and Ms. Beal noted a musty smell in this area, and also opined that the wall cavity appeared to have been wet at one time. It is further admitted, upon information and belief, that Mr. Trevathan and Ms. Beal informed plaintiffs that they observed no visible mold in the wall cavity. Except as expressly admitted herein, the allegations contained in paragraph 19 of plaintiffs' complaint are denied.

20. It is admitted that on or about 22 August 2003, Alan Collins visited the Apartment, and that Mr. Collins is employed by ContraVest Construction, and that plaintiffs were told that mold testing would be conducted. Arringdon lacks information sufficient to form a belief as to the truth of whether plaintiffs received a copy of the work order relating to Mr. Collins' visit, if such a document exists. Except as expressly admitted herein, the allegations

contained in paragraph 20 of plaintiffs' complaint are denied.

21.    It is admitted, upon information and belief, that plaintiffs or their agents cut an additional hole in the front bedroom closet wall in the Apartment. Except as expressly admitted herein, Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of plaintiffs' complaint, which are therefore denied.

22.    Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of plaintiffs' complaint, which are therefore denied.

23.    Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of plaintiffs' complaint, which are therefore denied.

24.    It is admitted that U.S. Restoration performed mold testing at the Apartment on or about 15 September 2003, and that Dennis Zagata of U.S. Restoration sent samples to EMSL for analysis. To the extent that the allegations in paragraph 24 of plaintiffs' complaint purport to recite the terms of the document referenced therein, Arringdon responds that the document speaks for itself. It is admitted that said document indicates "Low" in the column with the heading "Concentration" for the "Location[s]" "In Closet Cavity Cake" and "Kitchen Dishwasher." Except as expressly admitted herein, the allegations contained in paragraph 24 of plaintiffs' complaint are denied.

25.    It is admitted that Wendy Ruud of Insurance Office of America contacted plaintiff Kittell and provided her with U.S. Restoration's lab results. It is further admitted that plaintiffs' were informed that Ms. Ruud would be handling future communications with them. Except as expressly admitted herein, the allegations contained in paragraph 25 of plaintiffs' complaint are denied.

26.     It is admitted that Gabby Mossman, Property Manager for Colonial Property

Services, Inc., received a letter from Dennis E. Ritchie, Field Inspections Supervisor for the

Durham City-County Inspections Department, dated 24 September 2003. To the extent that the

allegations in paragraph 26 purport to recite the terms of the document referenced in paragraph

26, Arringdon responds that the document speaks for itself. It is admitted that said document

contains the following language: ".... The wall cavities, in the Master bedroom closet, are

holding moisture from the water infiltration that caused the exterior repair work to be performed

on the verandas. The gypsum wall board in the closet will need to be removed and the cavities ·

cleaned and dried before installing new insulation and wall board." Except as expressly admitted

herein, the allegations contained in paragraph 26 of plaintiffs' complaint are denied.

27.     It is admitted that Gabby Mossman, Property Manager for Colonial Property

Services, Inc., received a Notice of Hearing from the Durham Department of Housing dated 30

September 2003. To the extent that the allegations in paragraph 27 purport to recite the terms of

the document referenced in paragraph 27, Arringdon responds that the document speaks for

itself. It is admitted that said document contains the language "Baseboard has mildew and

smell" and "Moisture/mildew buildup throughout interior of structure," and "Date Reported

9/25/03," under the heading "Description of Violations." Except as expressly admitted herein,

the allegations contained in paragraph 27 of plaintiffs' complaint are denied.

28.     Arringdon lacks information sufficient to form a belief as to the truth of the

allegations contained in paragraph 28 of plaintiffs' complaint, which are therefore denied.

29.     Arringdon lacks information sufficient to form a belief as to the truth of the

allegations contained in paragraph 29 of plaintiffs' complaint, which are therefore denied.

30.     It is admitted that, on or about 15 October 2003 to 17 October 2003, testing was performed at the Apartment by plaintiffs' agent. Arringdon lacks information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30 of plaintiffs' complaint, which are therefore denied.

31.     Arringdon lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of plaintiffs' complaint, which are therefore denied.

32.     It is admitted that plaintiffs have vacated the Apartment. It is further admitted, upon information and belief, that plaintiffs have placed their personal possessions in storage. Except as expressly admitted herein, the remaining allegations of paragraph 32 are denied.

## ALLEGATIONS REGARDING "DAMAGES"

33.     The allegations contained in paragraph 33 of plaintiffs' complaint are denied.

34.     The allegations contained in paragraph 34 of plaintiffs' complaint are denied.

35.     The allegations contained in paragraph 35 of plaintiffs' complaint are denied.

36.     The allegations contained in paragraph 36 of plaintiffs' complaint are denied.

37.     The allegations contained in paragraph 37 of plaintiffs' complaint are denied.

38.     It is admitted that Arringdon has not refunded, replaced or remediated plaintiffs' personal property. Though it is denied that there was any obligation to do so, it is further admitted that one or more offers were made to plaintiffs to remediate their alleged personal property damage, which plaintiffs refused. Except as expressly admitted herein, the allegations contained in paragraph 38 of plaintiffs' complaint are denied.

39.     The allegations contained in paragraph 39 of plaintiffs' complaint are denied.

## FIRST CLAIM FOR RELIEF ALLEGED
("Breach of Contract – Arringdon")

40.     Arringdon incorporates by reference its responses to paragraphs 1 through 39 of

plaintiffs' complaint as if fully set forth herein. To the extent that the allegations in paragraph 40 purport to recite the terms of the document referenced therein, Arringdon responds that the document speaks for itself, and specifically incorporates its response to paragraph 6 of plaintiffs' complaint. Except as expressly admitted herein, the allegations contained in paragraph 40 of plaintiffs' complaint are denied.

41. The allegations contained in paragraph 41 of plaintiffs' complaint are denied.

42. The allegations contained in paragraph 42 of plaintiffs' complaint are denied.

## SECOND CLAIM FOR RELIEF ALLEGED
("Breach of Implied Warranty of Habitability, N.C. Gen. Stat. § 42-42(a)")

43. Arringdon incorporates by reference its responses to paragraphs 1 through 42 of plaintiffs' complaint as if fully set forth herein

44. The allegations contained in paragraph 44 of plaintiffs' complaint state a conclusion of law to which no response is required. Except as expressly admitted herein, the allegations contained in paragraph 44 are denied.

45. The allegations contained in paragraph 45 of plaintiffs' complaint state a conclusion of law to which no response is required. To the extent that a response is required, Arringdon denies that paragraph 45 is an accurate recitation of all of the provisions of N.C. Gen. Stat. § 42-42, and further responds that the statute speaks for itself. Except as expressly admitted herein, the allegations contained in paragraph 45 are denied.

46. The allegations contained in paragraph 46 of plaintiffs' complaint are denied.

## THIRD CLAIM FOR RELIEF ALLEGED
("Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1")

47.     Arringdon incorporates by reference its responses to paragraphs 1 through 46 of plaintiffs' complaint as if fully set forth herein

48.     The allegations contained in paragraph 48 of plaintiffs' complaint state a conclusion of law to which no response is required. To the extent that the allegations purport to recite the contents of N.C. Gen. Stat. § 75-1.1, Arringdon responds that the statute speaks for itself. Except as expressly admitted herein, the allegations contained in paragraph 48 are denied.

49.     The allegations contained in paragraph 49 of plaintiffs' complaint state a conclusion of law to which no response is required. To the extent that the allegations purport to recite the contents of N.C. Gen. Stat. § 75-1.1, Arringdon responds that the statute speaks for itself. Except as expressly admitted herein, the allegations contained in paragraph 49 are denied.

50.     The allegations contained in paragraph 50 of plaintiffs' complaint are denied.

51.     The allegations contained in paragraph 51 of plaintiffs' complaint are denied.

52.     The allegations contained in paragraph 52 of plaintiffs' complaint state a conclusion of law to which no response is required. To the extent that a response is required, Arringdon denies that it breached any duty to plaintiffs. Except as expressly admitted herein, the allegations contained in paragraph 52 are denied.

53.     The allegations contained in paragraph 53 of plaintiffs' complaint are denied.

54.     The allegations contained in paragraph 54 of plaintiffs' complaint are denied.

55.     The allegations contained in paragraph 55 of plaintiffs' complaint are denied.

56.     The allegations contained in paragraph 56 of plaintiffs' complaint are denied.

57.     The allegations contained in paragraph 57 of plaintiffs' complaint are denied.

58.     The allegations contained in paragraph 58 of plaintiffs' complaint state a

conclusion of law to which no response is required. To the extent that a response is required, the allegations contained in paragraph 58 of plaintiffs' complaint are denied.

## FIRST FURTHER DEFENSE

Plaintiffs' complaint fails to state a claim for relief against Arringdon and should be dismissed pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

## SECOND FURTHER DEFENSE

To the extent plaintiffs suffered any injury, which is expressly denied, plaintiffs have failed to mitigate their damages and/or have been contributorily negligent.

## THIRD FURTHER DEFENSE

Plaintiffs' claims are or may be barred by the fact that any and all actions taken by Arringdon and/or its agents were in good faith, performed in a reasonable time and manner, and authorized by contract and by law.

## FOURTH FURTHER DEFENSE

Plaintiffs' claims are or may be barred by plaintiffs' failure to abide by the terms of the Residential Lease Agreement.

## FIFTH FURTHER DEFENSE

To the extent plaintiffs suffered any injury, which is expressly denied, plaintiffs' injuries resulted from other intervening or superseding causes.

## SIXTH FURTHER DEFENSE

Plaintiffs' claims are or may be barred by the lack of proximate causation between any acts or omissions of Arringdon and the injuries alleged by plaintiffs.

## SEVENTH FURTHER DEFENSE

Plaintiffs' claims are or may be barred by remoteness.

## EIGHTH FURTHER DEFENSE

To the extent plaintiffs suffered any injury, which is expressly denied, Arringdon pleads in defense of plaintiffs' claims the lack of foreseeability.

## NINTH FURTHER DEFENSE

To the extent plaintiffs suffered any injury, which is expressly denied, Arringdon pleads in defense of plaintiffs' claims, upon information and belief, that plaintiffs' injuries resulted from preexisting conditions.

## TENTH FURTHER DEFENSE

To the extent plaintiffs suffered any injury, which is expressly denied, Arringdon pleads in defense of plaintiffs' claims, upon information and belief, plaintiffs' failure to maintain the premises.

## ELEVENTH FURTHER DEFENSE

To the extent plaintiffs suffered any injury, which is expressly denied, Arringdon pleads in defense of plaintiffs' claims the lack of permanency.

## TWELFTH FURTHER DEFENSE

Arringdon reserves its right to raise such additional and further defenses as may become evident by further pleadings and discovery.

WHEREFORE, having answered plaintiffs' complaint as fully as it is advised that it was its duty, Arringdon Development, Inc. prays that:

1. Plaintiffs have and recover nothing of Arringdon Development, Inc.;

2. Plaintiffs' action be dismissed with prejudice;

3. The costs of this action, including attorneys' fees, be taxed against a party other than Arringdon Development, Inc.;

4. Arringdon Development, Inc. have and recover its attorneys' fees from plaintiffs, to the extent allowable by law;

5. A trial by jury be had on any issues so triable; and

6. The Court allow such other and further relief as it deems just and proper.

This the 28th day of June, 2004.

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Angela L. Little
N.C. State Bar No. 27281
Laura M. Loyek
N.C. State Bar. No. 28708

Attorneys for Arringdon Development, Inc.

OF COUNSEL:

SMITH MOORE LLP
P.O. Box 21927 (27420)
300 N. Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

SMITH MOORE LLP
P.O. Box 27525 (27611)
2800 Two Hannover Square
Raleigh, North Carolina 27601
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing ANSWER has been duly served upon the

plaintiffs by depositing a copy thereof in the United States Mail, first-class, postage prepaid,

addressed to the following counsel of record:

> Kimberly R. Wilson
> Lewis & Roberts, PLLC
> 1305 Navaho Drive, Suite 400
> Raleigh, NC 27609

This the 28th day of June, 2004.

Laura M. Loyek

NORTH CAROLINA

FILED

2004 JUL -9 AM 9: 28

DURHAM COUNTY, C.S.C.

BY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-01749

DURHAM COUNTY

RONALD A. DONNELLY, JR., and
THERESA M. KITTELL,

      Plaintiffs,

v.

ARRINGDON DEVELOPMENT, INC.,

      Defendant.

**REQUEST FOR WRITTEN
STATEMENT OF MONETARY
RELIEF SOUGHT
TO PLAINTIFF
RONALD A. DONNELLY, JR.**

**[OTHR]**

Defendant Arringdon Development, Inc. requests, pursuant to Rule 8(a)(2) of the

North Carolina Rules of Civil Procedure, that plaintiff Ronald A. Donnelly, Jr. serve on

counsel for Arringdon Development, Inc., within thirty days, a written statement of the

amount of monetary relief sought by the plaintiff Ronald A. Donnelly, Jr. in this action.

Further, pursuant to Rule 8(a)(2), the responding statement shall not be filed with the

clerk until the action has been called for trial or until entry of default.

This the 8th day of July, 2004.

J. Donald Cowan, Jr.
N.C. Bar No. 0968
Angela L. Little
N.C. State Bar No. 27281
Laura M. Loyek
N.C. State Bar. No. 28708
Attorneys for Arringdon Development, Inc.

OF COUNSEL:

SMITH MOORE LLP
300 North Greene Street, Suite 1400
Post Office Box 21927
Greensboro, NC  27420
Telephone: (336) 378-5200
Facsimile:  (336) 378-5400

SMITH MOORE LLP
2800 Two Hannover Square
Post Office Box 27525 (27611)
Raleigh, North Carolina 27601
Telephone: (919) 755-8700
Facsimile:  (919) 755-8800

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Request for Written Statement of Monetary Relief Sought to Plaintiff Ronald A. Donnelly, Jr. has been duly served upon the plaintiffs by depositing a copy thereof in the United States Mail, first-class, postage prepaid, addressed to the following counsel of record:

> Kimberly R. Wilson
> Lewis & Roberts, PLLC
> 1305 Navaho Drive, Suite 400
> Raleigh, NC 27609
>
> E.D. Gaskins, Jr.
> Everett, Gaskins, Hancock & Stevens, LLP
> P. O. Box 911
> Raleigh, NC 27602

This the 8th day of July, 2004.

Angela L. Little

NORTH CAROLINA

DURHAM COUNTY

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-01749

2004 JUL -9 AM 9: 30

DURHAM COUNTY, C.S.C.

RONALD A. DONNELLY, JR. and
THERESA M. KITTELL,

   Plaintiffs,

  v.

ARRINGDON DEVELOPMENT, INC.,

   Defendant.

**REQUEST FOR WRITTEN
STATEMENT OF MONETARY
RELIEF SOUGHT
TO PLAINTIFF
THERESA M. KITTELL**

**[OTHR]**

Defendant Arringdon Development, Inc. requests, pursuant to Rule 8(a)(2) of the

North Carolina Rules of Civil Procedure, that plaintiff Theresa M. Kittell serve on

counsel for Arringdon Development, Inc., within thirty days, a written statement of the

amount of monetary relief sought by the plaintiff Theresa M. Kittell in this action.

Further, pursuant to Rule 8(a)(2), the responding statement shall not be filed with the

clerk until the action has been called for trial or until entry of default.

This the 8th day of July, 2004.

      J. Donald Cowan, Jr.
      N.C. Bar No. 0968
      Angela L. Little
      N.C. State Bar No. 27281
      Laura M. Loyek
      N.C. State Bar. No. 28708
      Attorneys for Arringdon Development, Inc.

OF COUNSEL:

SMITH MOORE LLP
300 North Greene Street, Suite 1400
Post Office Box 21927
Greensboro, NC 27420
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

SMITH MOORE LLP
2800 Two Hannover Square
Post Office Box 27525 (27611)
Raleigh, North Carolina 27601
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Request for Written Statement of
Monetary Relief Sought to Plaintiff Theresa M. Kittell has been duly served upon the
plaintiffs by depositing a copy thereof in the United States Mail, first-class, postage
prepaid, addressed to the following counsel of record:

> Kimberly R. Wilson
> Lewis & Roberts, PLLC
> 1305 Navaho Drive, Suite 400
> Raleigh, NC 27609
>
> E.D. Gaskins, Jr.
> Everett, Gaskins, Hancock & Stevens, LLP
> P. O. Box 911
> Raleigh, NC 27602

This the 8th day of July, 2004.

Angela L. Little

NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
DURHAM COUNTY      19   FILE NO. 04 CVS 1749

RONALD A. DONNELLY, JR.     )
and THERESA M. KITTELL,      )
         Plaintiffs,         )
                     )
v.                        )     **AFFIDAVIT OF SERVICE**
                     )
ARRINGDON DEVELOPMENT,   )
INC..                     )
         Defendant.       )

---

Kimberly R. Wilson, being first duly sworn, deposes and says that:

1.     The attached Subpoena in the above-referenced action was deposited in the

United States Postal Service in Raleigh, North Carolina, for mailing by certified mail, return

receipt requested as follows:

> Allstate Insurance Company
> Market Claim Office
> P.O. Box 34212
> Charlotte, NC 28234-4212

2.     Process was, in fact, received by Allstate Insurance Company on May 24, 2004,

as evidenced by the attached Return Receipt for Certified Mail.

This the _9th_ day of July, 2004.

> LEWIS & ROBERTS, PLLC
>
> Kimberly R. Wilson
> 1305 Navaho Drive, Suite 400
> Raleigh, NC 27609
> Telephone: 919-981-0191
> Attorneys for Plaintiffs

[Notary Block Contained on Following Page]

{00207551.DOC}

Sworn to and subscribed before
me this the __8th__ day of July, 2004.

___Lori A. Strayer___
Notary Public
My Commission Expires: __11·16·04__

## CERTIFICATE OF SERVICE

I, Kimberly R. Wilson, hereby certify that the foregoing document was served upon all parties of record to their counsel of record by mailing a copy to the address indicated below with the proper postage attached and deposited in an official depository under the exclusive care and custody of the United States Postal Service in Raleigh, North Carolina, on the _8th_ day of July, 2004.

> J. Donald Cowan, Jr.
> Angela L. Little
> Smith Moore, LLP
> Suite 1400
> 300 North Greene Street
> Greensboro, NC 27401

_____
Kimberly R. Wilson

{00207551.DOC}

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**LEWIS & ROBERTS**
PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW
1305 NAVAHO DRIVE, SUITE 400
RALEIGH, NORTH CAROLINA 27609-7482

Attn: Tori Strayer                    15205.002

347434

---

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ mullio _____ ☐ Agent ☐ Addressee<br>B. Received by ( *Printed Name*) Jim mulls / C. Date of Delivery 5/24/04<br>D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| 1. Article Addressed to:<br><br>Allstate Insurance Company<br>Market Claim Office<br>P.O. Box 34212<br>Charlotte, NC 28234·4212<br>Attn: Cheryl L. Drew | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☒ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7002 2030 0005 5396 0761 |
| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1540 |

# STATE OF NORTH CAROLINA

_____ Durham _____ County

File No.
**04 CVS 1749**

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Ronald A. Donnelly, Jr. and Theresa M. Kittell | Additional File Numbers |
|---|---|

VERSUS

| Arringdon Development, Inc. | **SUBPOENA** |
|---|---|

G.S. 1A-1, Rule 45

| Party Requesting Subpoena<br>☒ State/Plaintiff  ☐ Defendant | NOTE TO PARTIES NOT REPRESENTED BY COUNSEL: Subpoenas may be produced at your request, but must be signed and issued by the office of the Clerk of Superior Court, or by a magistrate or judge. |
|---|---|

TO

| Name And Address Of Person Subpoenaed<br>Allstate Insurance Company<br>Market Claim Office; P.O. Box 34212<br>Charlotte      NC    28234-4212 | Alternate Address |
|---|---|
| Telephone No.<br>    (800) 825-3659 | Telephone No. |

**YOU ARE COMMANDED TO:** (check all that apply):

☐ appear and testify, in the above entitled action, before the court at the place, date and time indicated below.

☐ appear and testify, in the above entitled action, at a deposition at the place, date and time indicated below.

☒ produce and permit inspection and copying of the following items, at the place, date and time indicated below.

    ☐ See attached list. (List here if space sufficient)

Per Rule 45 of N.C.R.Civ.P., produce your entire water/mold claim file regarding Claim No. 7693139862UCD; date of incident: 11/14/03; insured: Theresa Kittell; including, but not limited to the following: correspondence, memoranda, notes, summaries, reports, photographs, telephone logs and any other document relating to said claim which is not kept in the actual file.

| Name And Location Of Court/Place Of Deposition/Place To Produce<br>Lewis & Roberts<br>Suite 1100, 128 South Tryon Street<br>Charlotte, NC 28202-5012 | Date To Appear/Produce<br>    06/19/04 |
|---|---|
| | Time To Appear/Produce<br>    10:00    ☒ AM ☐ PM |
| Name And Address Of Applicant Or Applicant's Attorney<br>Kimberly R. Wilson of Lewis & Roberts<br>1305 Navaho Drive, Suite 400<br>Raleigh      NC    27609 | Date<br>May 19, 2004 |
| | Signature |
| Telephone No.<br>    (919) 981-0191 | ☐ Deputy CSC ☒ Assistant CSC ☐ Clerk Of Superior Court ☐ Superior Court Judge<br>☐ Magistrate ☒ Attorney/DA ☐ District Court Judge |

**RETURN OF SERVICE**

I certify this subpoena was received and served on the person subpoenaed as follows:

By ☐ personal delivery.

    ☐ registered or certified mail, receipt requested and attached.

    ☐ telephone communication (For use only by the sheriff's office for witness subpoenaed to appear and testify.)

    ☐ I was unable to serve this subpoena.

| Service Fee<br>$ | ☐ Paid<br>☐ Due | Date Served | Signature of Authorized Server | Title |
|---|---|---|---|---|

**NOTE TO PERSON REQUESTING SUBPOENA:** A copy of this subpoena must be delivered, mailed or faxed to the attorney for each party in this case. If a party is not represented by an attorney, the copy must be mailed or delivered to the party. This does not apply in criminal cases.

AOC-G-100, Rev. 10/03
® 2003 Administrative Office of the Courts

(Please See Reverse Side)

NOTE: Rule 45, North Carolina Rules of Civil Procedure, Parts (c) and (d).

(c) Protection Of Persons Subject To Subpoena

(1) Avoid undue burden or expense. - A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena. The court shall enforce this subdivision and impose upon the party or attorney in violation of this requirement an appropriate sanction that may include compensating the person unduly burdened for lost earnings and for reasonable attorney's fees.

(2) For production of public records or hospital medical records. - Where the subpoena commands any custodian of public records or any custodian of hospital medical records, as defined in G.S. 8-44.1, to appear for the sole purpose of producing certain records in the custodian's custody, the custodian subpoenaed may, in lieu of personal appearance, tender to the court in which the action is pending by registered or certified mail or by personal delivery, on or before the time specified in the subpoena, certified copies of the records requested together with a copy of the subpoena and an affidavit by the custodian testifying that the copies are true and correct copies and that the records were made and kept in the regular course of business, or if no such records are in the custodian's custody, an affidavit to that effect. When the copies of records are personally delivered under this subdivision, a receipt shall be obtained from the person receiving the records. Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication. Copies of hospital medical records tendered under this subdivision shall not be open to inspection or copied by any person, except to the parties to the case or proceedings and their attorneys in depositions, until ordered published by the judge at the time of the hearing or trial. Nothing contained herein shall be construed to waive the physician-patient privilege or to require any privileged communication under law to be disclosed.

(3) Written objection to subpoena. - Subject to subsection (d) of this rule, a person commanded to appear at a deposition or to produce and permit the inspection and copying of records may, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, serve upon the party or the attorney designated in the subpoena written objection to the subpoena, setting forth the specific grounds for the objection. The written objection shall comply with the requirements of Rule 11. Each of the following grounds may be sufficient for objecting to a subpoena:

  a. The subpoena fails to allow reasonable time for compliance.

  b. The subpoena requires disclosure of privileged or other protected matter and no exception or waiver applies to the privilege or protection.

  c. The subpoena subjects a person to an undue burden.

  d. The subpoena is otherwise unreasonable or oppressive.

  e. The subpoena is procedurally defective.

(4) Order of court required to override objection. - If objection is made under subdivision (3) of this subsection, the party serving the subpoena shall not be entitled to compel the subpoenaed person's appearance at a deposition or to inspect and copy materials to which an objection has been made except pursuant to an order of the court. If objection is made, the party serving the subpoena may, upon notice to the subpoenaed person, move at any time for an order to compel the subpoenaed person's appearance at the deposition or the production of the materials designated in the subpoena. The motion shall be filed in the court in the county in which the deposition or production of materials is to occur.

(5) Motion to quash or modify subpoena. - A person commanded to appear at a trial, hearing, deposition, or to produce and permit the inspection and copying of records, books, papers, documents, or other tangible things, within 10 days after service of the subpoena or before the time specified for compliance if the time is less than 10 days after service, may file a motion to quash or modify the subpoena. The court shall quash or modify the subpoena if the subpoenaed person demonstrates the existence of any of the reasons set forth in subdivision (3) of this subsection. The motion shall be filed in the court in the county in which the trial, hearing, deposition, or production of materials is to occur.

(6) Order to compel; expenses to comply with subpoena. - When a court enters an order compelling a deposition or the production of records, books, papers, documents, or other tangible things, the order shall protect any person who is not a party or an agent of a party from significant expense resulting from complying with the subpoena. The court may order that the person to whom the subpoena is addressed will be reasonably compensated for the cost of producing the records, books, papers, documents, or tangible things specified in the subpoena.

(7) Trade secrets, confidential information. - When a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information, a court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or when the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship, the court may order a person to make an appearance or produce the materials only on specified conditions stated in the order.

(8) Order to quash: expenses. - When a court enters an order quashing or modifying the subpoena, the court may order the party on whose behalf the subpoena is issued to pay all or part of the subpoenaed person's reasonable expenses including attorney's fees.

(d) Duties In Responding To Subpoena

(1) Form of response. - A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label the documents to correspond with the categories in the request.

(2) Specificity of objection. - When information subject to a subpoena is withheld on the objection that is is subject to protection as trial preparation materials, or that it is otherwise privileged, the objection shall be made with specificity and shall be supported by a description of the nature of the communications, records, books, papers, documents, or other tangible things not produced, sufficient for the requesting party to contest the objection.

## INFORMATION FOR WITNESS

NOTE: If you have any questions about being subpoenaed as a witness, you should contact the person named on the other side of this Subpoena in the box labeled "Name And Address Of Applicant Or Applicant's Attorney.

DUTIES OF A WITNESS

● Unless otherwise directed by the presiding judge, you must answer all questions asked when you are on the stand giving testimony.

● In answering questions, speak clearly and loudly enough to be heard.

● Your answers to questions must be truthful.

● If you are commanded to produce any items, you must bring them with you to court or to the deposition.

● You must continue to attend court until released by the court. You must continue to attend a deposition until the deposition is completed.

BRIBING OR THREATENING A WITNESS

It is a violation of State law for anyone to attempt to bribe, threaten, harass, or intimidate a witness. If anyone attempts to do any of these things concerning your involvement as a witness in a case, you should promptly report that to the district attorney or the presiding judge.

WITNESS FEE

A witness under subpoena and that appears in court to testify, is entitled to a small daily fee, and to travel expense reimbursement, if it is necessary to travel outside the county in order to testify. (The fee for an "expert witness" will be set by the presiding judge.) After you have been discharged as a witness, if you desire to collect the statutory fee, you should immediately contact the Clerk's office and certify your attendance as a witness so that you will be paid any amount due you.

AOC-G-100, Side Two, Rev. 10/03
© 2003 Administrative Office of the Courts

NORTH CAROLINA

DURHAM COUNTY

RONALD A. DONNELLY, JR.,
and THERESA M. KITTELL,
                        Plaintiffs,

v.

ARRINGDON DEVELOPMENT,
INC.,
                        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 04 CVS 1749

**MOTION FOR ENLARGEMENT OF
TIME TO ANSWER DEFENDANT'S
FIRST SET OF INTERROGATORIES
AND REQUEST FOR PRODUCTION
OF DOCUMENTS TO PLAINTIFF
RONALD A. DONNELLY, JR.**

)
)
)
)
)
)
)
)

Plaintiff, Ronald A. Donnelly, Jr. by and through the undersigned attorney, shows unto

the Court that the time for serving answers to Defendant Arringdon Development's First Set of

Interrogatories and Request For Production Of Documents to Plaintiff Ronald A. Donnelly, Jr.

has not expired and moves the Court pursuant to Rule 6(b) of the North Carolina Rules of Civil

Procedure to extend the time for an additional thirty (30) days.

This the ⁴ᵗʰ day of August, 2004.

LEWIS & ROBERTS, PLLC

By: _____

Kimberly R. Wilson
Attorney for Plaintiffs
Post Office Box 17529
Raleigh, NC 27619
Telephone: (919) 981-0191
Facsimile: (919) 981-0431

EVERETT, GASKINS, HANCOCK & STEVENS

E.D. Gaskins, Jr.
Michael J. Tadych
127 W. Hargett Street, Suite 600
Raleigh, NC 27602
Telephone: (919) 755-0025

{00210049.DOC}

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Motion for Enlargement of Time to Answer Defendant Arringdon Development's First Set of Interrogatories and Request For Production Of Documents to Plaintiff Ronald A. Donnelly, Jr. was served upon the following attorneys of record in this action, by mail addressed to:

> J. Donald Cowan, Jr.
> Angela L. Little
> Smith Moore, LLP
> 300 North Greene Street, Suite 1400
> Greensboro, NC 27401
> *Attorneys for Defendant Arringdon*
> *Development, Inc.*

This the ___4th___ day of August, 2004.

LEWIS & ROBERTS, PLLC

By: _____
Kimberly K. Wilson
Attorney for Plaintiffs
Post Office Box 17529
Raleigh, NC 27619
Telephone: (919) 981-0191
Facsimile: (919) 981-0431

EVERETT, GASKINS, HANCOCK
& STEVENS

E.D. Gaskins, Jr.
Michael J. Tadych
127 W. Hargett Street, Suite 600
Raleigh, NC 27602
Telephone: (919) 755-0025

{00210049.DOC}

NORTH CAROLINA                         IN THE GENERAL COURT OF JUSTICE
                                              SUPERIOR COURT DIVISION
DURHAM COUNTY                          FILE NO. 04 CVS 1749

RONALD A. DONNELLY, JR.,
and THERESA M. KITTELL,            )        **MOTION FOR ENLARGEMENT OF**
              Plaintiffs,          )        **TIME TO ANSWER DEFENDANT'S**
                                   )        **FIRST SET OF INTERROGATORIES**
       v.                          )        **AND REQUEST FOR PRODUCTION**
                                   )        **OF DOCUMENTS TO PLAINTIFF**
ARRINGDON DEVELOPMENT,             )        **THERESA M. KITTELL**
INC.,                              )
              Defendant.           )


        Plaintiff, Theresa M. Kittell, by and through the undersigned attorney, shows unto the

Court that the time for serving answers to Defendant Arringdon Development's First Set of

Interrogatories and Request For Production Of Documents to Plaintiff Theresa M. Kittell has

not expired and moves the Court pursuant to Rule 6(b) of the North Carolina Rules of Civil

Procedure to extend the time for an additional thirty (30) days.

        This the ___4th___ day of August, 2004.


                                       LEWIS & ROBERTS, PLLC

                                       By: _____
                                           Kimberly R. Wilson
                                           Attorney for Plaintiffs
                                           Post Office Box 17529
                                           Raleigh, NC 27619
                                           Telephone: (919) 981-0191
                                           Facsimile: (919) 981-0431


                                       EVERETT, GASKINS, HANCOCK & STEVENS

                                           E.D. Gaskins, Jr.
                                           Michael J. Tadych
                                           127 W. Hargett Street, Suite 600
                                           Raleigh, NC 27602
                                           Telephone: (919) 755-0025

;00210050.DOC;

## CERTIFICATE OF SERVICE

I certify that the foregoing Motion for Enlargement of Time to Answer Defendant Arringdon Development's First Set of Interrogatories and Request For Production Of Documents to Plaintiff Theresa M. Kittell was served upon the following attorneys of record in this action, by mail addressed to:

> J. Donald Cowan, Jr.
> Angela L. Little
> Smith Moore, LLP
> 300 North Greene Street, Suite 1400
> Greensboro, NC 27401
> *Attorneys for Defendant Arringdon*
> *Development, Inc.*

This the 4ᵗʰ day of August, 2004.

LEWIS & ROBERTS, PLLC

By:

Kimberly R. Wilson
Attorney for Plaintiffs
Post Office Box 17529
Raleigh, NC 27619
Telephone: (919) 981-0191
Facsimile: (919) 981-0431

EVERETT, GASKINS, HANCOCK
& STEVENS

E.D. Gaskins, Jr.
Michael J. Tadych
127 W. Hargett Street, Suite 600
Raleigh, NC 27602
Telephone: (919) 755-0025

{00210050.DOC}

NORTH CAROLINA

DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 04 CVS 1749

RONALD A. DONNELLY, JR.,
and THERESA M. KITTELL,
   Plaintiffs,

v.

ARRINGDON DEVELOPMENT,
INC.,
   Defendant.

)
)
)
)
)
)
)
)
)
)

**ORDER**

THIS CAUSE came on to be heard and was heard by the undersigned Clerk on Motion of Plaintiff Ronald A. Donnelly, Jr. for an Order extending time in which to serve answers to Defendant Arringdon Development's First Set of Interrogatories and Request For Production Of Documents to Plaintiff Ronald A. Donnelly, Jr. pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure; and it appearing to the Court that the time allowed has not expired and, therefore, the Motion should be granted;

IT IS, THEREFORE, ORDERED that the time for serving answers to Arringdon Development's First Set of Interrogatories and Request For Production Of Documents to Plaintiff Ronald A. Donnelly, Jr. by the Plaintiff be extended to and including the 6th day of September, 2004.

This __19__ day of August, 2004.

        _____
        ASSISTANT CLERK OF SUPERIOR COURT
        DURHAM COUNTY

{00210049.DOC}

NORTH CAROLINA

DURHAM COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 04 CVS 1749

RONALD A. DONNELLY, JR.,
and THERESA M. KITTELL,
       Plaintiffs,

     v.

ARRINGDON DEVELOPMENT,
INC.,
       Defendant.

)
)
)
)
)
)
)
)
)
)

**ORDER**

THIS CAUSE came on to be heard and was heard by the undersigned Clerk on Motion of Plaintiff Theresa M. Kittell for an Order extending time in which to serve answers to Defendant Arringdon Development's First Set of Interrogatories and Request For Production Of Documents to Plaintiff Theresa M. Kittell pursuant to Rule 6(b) of the North Carolina Rules of Civil Procedure; and it appearing to the Court that the time allowed has not expired and, therefore, the Motion should be granted;

IT IS, THEREFORE, ORDERED that the time for serving answers to Arringdon Development's First Set of Interrogatories and Request For Production Of Documents to Plaintiff Theresa M. Kittell by the Plaintiff be extended to and including the 6th day of September, 2004.

This __19__ day of August, 2004.

_____
ASSISTANT CLERK OF SUPERIOR COURT J406
DURHAM COUNTY

{00210050.DOC}

# STATE OF NORTH CAROLINA

_DURHAM_ County

File No.
04 CVS 174

In The General Court Of Justice
☐ District ☑ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>Ronald A. Donnelly, Jr. and Theresa M. Kittell | |
| **VERSUS** | |
| Name Of Defendant<br>Arringdon Development, Inc. | |

**MOTION COVER SHEET**

_Rule 5(b), Rules of Practice For Superior and District Courts_

| Name And Address Of Attorney Or Party. If Not Represented (complete for initial appearance or change of address)<br>Kimberly R. Wilson<br>1305 Navaho Drive, Suite 400<br>Raleigh, NC 27609 | Name Of Firm<br>Lewis & Roberts, PPLC | | |
|---|---|---|---|
| | Tax ID No. | Telephone No. | FAX No. |
| Attorney Bar No. | ☐ Initial Appearance in Case | | ☐ Change of Address |

## MOTION

| Type of Motion<br>(For each motion, enter code for<br>Type of Motion from list on | By (Identify Party) | Against (Identify Party) |
|---|---|---|
| EXTM | ☐ All    Plaintiff Theresa M. Kittell | ☐ All    Defendant Arringdon Development |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |

| Date | Signature Of Attorney/Party |
|---|---|
| 08/04/2004 | |

**NOTE:** _The initial filing in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a cover sheet or the filing must comply with G.S. 7A-34.1._

AOC-CV-752, Rev. 10/01, © 2001 Administrative Office of the Courts

(Over)

# STATE OF NORTH CAROLINA

~~FILED~~

DURHAM County 2004 AUG -6 PH 3: 31

DURHAM
...Y C.S.C.

File No.
04 CVS 174

In The General Court Of Justice
☐ District ☑ Superior Court Division

| | |
|---|---|
| Name Of Plaintiff<br>Ronald A. Donnelly, Jr. and Theresa M. Kittell | **MOTION COVER SHEET** |
| **VERSUS** | |
| Name Of Defendant<br>Arringdon Development, Inc. | Rule 5(b), Rules of Practice For Superior and District Courts |

| Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)<br>Kimberly R. Wilson<br>1305 Navaho Drive, Suite 400<br>Raleigh, NC 27609 | Name Of Firm<br>Lewis & Roberts, PPLC | | |
|---|---|---|---|
| | Tax ID No. | Telephone No. | FAX No. |
| Attorney Bar No. | ☐ Initial Appearance in Case | | ☐ Change of Address |

## MOTION

| Type of Motion<br>(For each motion, enter code for Type of Motion from list on | By (Identify Party) | Against (Identify Party) |
|---|---|---|
| EXTM | ☐ All   Plaintiff Ronald A. Donnelly, Jr. | ☐ All   Defendant Arringdon Development |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |
| | ☐ All | ☐ All |

| Date<br>08/04/2004 | Signature Of Attorney/Party |
|---|---|

**NOTE:** *The initial filing in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a cover sheet or the filing must comply with G.S. 7A-34.1.*

AOC-CV-752, Rev 10/01, © 2001 Administrative Office of the Courts

(Over)

| | | |
|---|---|---|
| **STATE OF NORTH CAROLINA**<br><br>DURHAM COUNTY | | *File No.* **04-CVS-001749** <br><br>In The General Court Of Justice<br>Superior Court Division |

| | |
|---|---|
| *Name Of Plaintiff(s)*<br>DONNELLY, RONALD, A, JR | **NOTICE FOR MEDIATED**<br>**SETTLEMENT CONFERENCE**<br>**AND**<br>**TRIAL CALENDAR NOTICE** |
| *Name Of Plaintiff's Attorney(s)*<br>KIMBERLY R WILSON<br>PO BOX 17529<br>RALEIGH, NC 27619 | G.S. 7A-38.1; Rules Of Mediated Settlement Conference |
| | *Deadline For Completion Of Mediated Settlement Conference*<br>**03/01/2005** |
| **VERSUS** | |
| *Name Of Defendant(s)*<br>ARRINGDON DEVELOPMENT INC | *Name And Address Of Other Interested Party(ies) ; Defendant 2* |
| *Name Of Defendant's Attorney(s)*<br>JAMES D JR COWAN<br>2800 TWO HANNOVER SQUARE<br>PO BOX 27525<br>RALEIGH, NC 27611 | *Name Of All Attorneys, If Applicable*<br>COWAN, JAMES, D, JR<br>LITTLE, ANGELA<br>WILSON, KIMBERLY, R<br>WILSON, KIMBERLY, R |

In accordance with the Rules Implementing Mediated Settlement Conferences, it is ORDERED that this case be referred to a mediated settlement conference, which shall be completed before the deadline shown above.

Within 21 days after the date of this Order, the parties may, by agreement, select a certified mediator or nominate a non-certified mediator to conduct their mediated settlement conference. Within 21 days after the date e of this Order, the plaintiff or the plaintiff's attorney shall notify the court of the selection of a certified mediator or the nomination of a non-certified mediator, or the failure of the parties to agree on a mediator. Notice shall be on form AOC-CV-812.

A mediator selected by agreement of the parties shall be compensated at a rate agreed upon between the mediator and the parties. A court appointed mediator shall be compensated at the rate of $125 per hour for time spent in the mediated settlement conference, to be billed in quarter hour segments. In addition, a $125 administrative fee shall be paid pursuant to Rule 7.B. Unless otherwise agreed to by the parties or ordered by the court, all mediator fees shall be paid directly to the mediator at the conclusion of the settlement conference. The conference fee shall be paid as provided for in Rule 7.D.

All persons required by Rule 4.A(1) to attend the conference shall be physically present unless such physical presence is excused pursuant to the agreement of all parties and persons required to attend and the mediator or by an order of the Senior Resident Superior Court Judge, upon motion of a party and with notice to all parties and persons required to attend and the mediator.

The mediator shall schedule the date, time and location of the conference and timely notify all attorneys and unrepresented parties. The conference shall be completed by the deadline for completion set forth above and the mediator shall report the results of the conference to the court within ten (10) days after the conference is completed.

| *Date*<br>8/12/04 | *Name Of Senior Resident Superior Court Judge OR Appointee*<br>LiBria R. Stephens, Trial Court Coordinator | *Signature Sr. Resident Superior Court Judge or Appointee* |
|---|---|---|

| TENTATIVE CALENDARING NOTICE |
|---|

*[This section is optional, to be used at the discretion of the Senior Resident Superior Court Judge; however, mediated settlement shall not delay other proceedings, including trial (Rule 3 E).]*

Parties are notified of the following tentative calendaring schedule adopted by the court. Final calendar notices will be provided through a published calendar, should settlement not be reached.

| | *Trial Date*<br>**04/25/2005** |
|---|---|

AOC-CV-811, Rev. 10/95<br>© 1997 Administrative Office of the Courts

Original Court File    Copy – Plaintiff    Copy – Defendant    Copy – Mediator

NORTH CAROLINA

DURHAM COUNTY

RONALD A. DONNELLY, JR., and
THERESA M. KITTELL,

Plaintiffs,

v.

ARRINGDON DEVELOPMENT, INC.,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04-CVS-01749

NOTICE OF FILING OF
NOTICE OF REMOVAL

PLEASE TAKE NOTICE that attached hereto is a copy of a Notice of Removal, which

has been filed with the Clerk of the United States District Court for the Middle District of North

Carolina. Pursuant to 28 U.S.C. § 1446(d), this effects the removal of the case and the State

Court may proceed no further unless the case is remanded.

This the 29th day of September, 2004.

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Angela L. Little
N.C. State Bar No. 27281
Laura M. Loyek
N.C. State Bar. No. 28708

Attorneys for Arringdon Development, Inc.

OF COUNSEL:

SMITH MOORE LLP
P.O. Box 21927 (27420)
300 N. Greene Street, Suite 1400
Greensboro, North Carolina 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400

SMITH MOORE LLP
P.O. Box 27525 (27611)
2800 Two Hannover Square
Raleigh, North Carolina 27601
Telephone: (919) 755-8700
Facsimile: (919) 755-8800

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing NOTICE OF FILING OF NOTICE OF

REMOVAL has been duly served upon the plaintiffs by depositing a copy thereof in the United

States Mail, first-class, postage prepaid, addressed to the following counsel of record:

> Kimberly R. Wilson
> Lewis & Roberts, PLLC
> 1305 Navaho Drive, Suite 400
> Raleigh, NC 27609
>
> E.D. Gaskins, Jr.
> Michael J. Tadych
> Everett, Gaskins, Hancock & Stevens LLP
> 127 W. Hargett Street, Suite 600
> Raleigh, NC 27602

This the 29th day of September, 2004.

Angela L. Little